

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG:AL
F.#2011R00006

*271 Cadman Plaza East*

*Brooklyn, New York  11201*

June 9, 2011

By ECF and Hand Delivery

The Honorable Kiyo A. Matsumoto
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

      Re:  United States v. Neil Messina
           Criminal Docket No. 11 CR 31 (KAM)

Dear Judge Matsumoto:

    On March 30, 2011, the Court released the defendant on a $3,600,000 bond, but, in light of the danger he posed, ordered that his conditions of release include home detention with electronic monitoring, no association with any co-defendants or members or associates of organized crime, and monitoring of all of his telephones and internet accounts.  (Order Setting Conditions of Release and Bond, Docket Entry No. 59.)  In a letter dated June 8, 2011, the defendant requested to modify the conditions of his release to permit him to attend a "business dinner meeting" at Ben & Jack's steakhouse.  (Docket Entry No. 78.)  For the reasons set forth below, the government respectfully submits that the conditions of release should not be modified.

## DISCUSSION

I.   The Defendant Is a Danger to the Community

    The defendant's request should be denied because he is a danger to the community.  First, as the Court is aware, the defendant is charged with murder.  The evidence of the murder is strong and includes eyewitness testimony, cooperating witness testimony, crime scene evidence, ballistics evidence and

consensual recordings of the defendant's admissions. (CD[1], "2009-10-26 Conversation" & "2010-04-06 Conversation (Pistone Murder).")

Second, the defendant is charged with another crime of violence: conspiring to use extortionate means to collect a debt. The proof of this crime also includes the defendant's recorded statements. On December 1, 2009, the defendant asked a cooperating witness if he was interested in doing "dirty work," which the defendant explained meant assaulting people who owe money. (CD, "2009-12-01 Conversation.") In particular, the defendant said that "dirty work" could require the cooperating witness to "give [someone] a beating" or "put a guy in the hospital," and the defendant stated that he was "in the middle of giving something away" -- i.e., assigning "dirty work." (Id.) Over the following two months, it emerged that this particular bit of "dirty work" involved the collection of a loansharking debt from a victim in Boston, a plan that ceased only after the victim told a co-defendant that FBI agents warned him that individuals in New York were looking for him.

Third, and in addition to these charged crimes, the defendant has access to firearms, including one with a silencer. In March 2010, co-defendant Nicolo Valenti offered to sell a cooperating witness a .22 caliber handgun equipped with a silencer. On April 6, 2010, in a consensually-recorded conversation, the defendant said to the cooperating witness, "I'm gonna find out if it's the one on Long Island. 'Cause in Long Island, we had a .22 with a silencer, right?" (CD, "2010-04-06 Conversation (Firearms).") Shortly thereafter, the defendant referred to a ".38 special" and said, "Nicky [Valenti] still has a pistol that's mine, a .32 revolver." (Id.) When the cooperating witness said that Nicolo Valenti claimed to own the latter firearm, the defendant responded, "It's not his. It's mine. . . . It's mine. He asked if he could hold it." (Id.)

Fourth, as proven in wiretap intercepts, the defendant has a history of domestic violence. In particular, on April 21, 2010, in a recorded conversation between the defendant and his girlfriend, the girlfriend said of their time together:

> Thirty-nine months have been nothing but horror. You knocked me out. I had to get a CAT scan. And that wasn't the first time you

---

[1] "CD" refers to the compact disc enclosed as Exhibit B to the government's detention memorandum dated February 23, 2011.

>    did that. . . . You punch me in the head, you
>    knock me out.

(CD, "2010-04-21 Conversation.")  When the defendant responded that he had not tried to punch the girlfriend in the head but had instead tried to grab her hair, she responded, "You went to grab me by my hair, but your grab turned into a punch and it turned into knocking me out, okay.  Okay."  (Id.)  The conversation continued and the defendant did not deny this allegation.  (Id.)  "A willingness to strike loved ones offers probative evidence of a tendency to violence and dangerousness toward others."  United States v. Mercedes, 254 F.3d 433, 437-38 (2d Cir. 2001).

II.  The Defendant Must Be Closely Monitored

In light of the significant danger posed by the defendant, the Court released him only subject to the aforementioned conditions, including home detention with electronic monitoring, which are designed to minimize his ability to commit crimes.  At a business dinner meeting, the government cannot adequately monitor the activities of the defendant to ensure that he does not commit crimes or direct others to commit crimes.  In addition, the proposed activity -- a "business dinner meeting" at a steakhouse -- is no basis for modification.  There is no reason the defendant cannot conduct business by telephone with the individuals he requests to meet at a steakhouse.

CONCLUSION

For the foregoing reasons, the government joins Pretrial Services in objecting to the defendant's request (Docket Entry No. 79), and respectfully asks that the request be denied.

                                        Respectfully submitted,

                                        LORETTA E. LYNCH
                                        UNITED STATES ATTORNEY

                    By:        /s/
                          Elizabeth A. Geddes
                          Allon Lifshitz
                          Assistant U.S. Attorneys

cc:  Vincent J. Romano, Esq. (by ECF)
     Gerald J. McMahon, Esq. (by ECF)
     U.S. Probation Officer Michael Ilaria (by emai)