1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

  UNITED STATES OF AMERICA,    :   11-CR-31(KAM)
                               :
                               :   U.S. Courthouse
                               :   Brooklyn, New York
       -against-               :
                               :   TRANSCRIPT OF
                               :   SENTENCING
                               :
                               :
  NEIL MESSINA,                :   November 8, 2013
                               :   12:45 p.m.
          Defendant.           :
                               :
- - - - - - - - - - - - - - X

BEFORE:
              HONORABLE KIYO A. MATSUMOTO, U.S.D.J.

APPEARANCES:

For the Government:     LORETTA E. LYNCH, ESQ.
                        United States Attorney
                        271 Cadman Plaza East
                        Brooklyn, New York 11201
                        BY:  ALLON LIFSHITZ, ESQ.
                             AMANDA HECTOR, ESQ.
                             Assistant U.S. Attorneys


For the Defendant:      GERALD J. McMAHON, ESQ.
                        MATTHEW MARI, ESQ.




Court Reporter:    Holly Driscoll, CSR
                   Official Court Reporter
                   225 Cadman Plaza East
                   Brooklyn, New York 11201
                   (718) 613-2274

Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.
```

2

1  THE COURT:  Good afternoon, everybody.
2  MS. McMAHON:  Good afternoon, Your Honor.
3  THE COURT:  Please have a seat.
4  THE CLERK:  This is criminal cause for a sentencing,
5  11-CR-31, USA versus Neil Messina.  Will the government state
6  their appearances please.
7  MR. LIFSHITZ:  Allon Lifshitz and Amanda Hector for
8  the United States.  Good afternoon, Your Honor.
9  THE COURT:  Good afternoon.
10  THE CLERK:  And for Mr. Messina.
11  MS. McMAHON:  Gerald J. McMahon and Matthew Mari for
12  the defendant.  Good afternoon, Your Honor.
13  MR. MARI:  Good afternoon, Judge.
14  THE COURT:  Good afternoon.
15  Good afternoon, Mr. Messina.  How are you?
16  THE DEFENDANT:  Good afternoon, Your Honor.
17  THE COURT:  Let me ask you please do you speak and
18  understand English without difficulty?
19  THE DEFENDANT:  Yes.
20  THE COURT:  Please raise your right hand and take an
21  oath.
22  (Defendant sworn by the clerk.)
23  THE DEFENDANT:  I do.
24  THE CLERK:  Thank you.
25  THE COURT:  Mr. Messina, good afternoon.  I'd like

1  to just point out that we have a court reporter here who is
2  making a transcript of today's proceeding, it will be part of
3  the official court record if you choose to exercise your
4  appellate rights.
5         I'd like to confirm that the government has given
6  all the victims timely notice of today's proceedings; is that
7  correct?
8         MR. LIFSHITZ:  Yes, that's correct, Your Honor, and
9  we would note that two members of the family of Joseph Pistone
10 are here, a brother and a sister, and they wish to be heard at
11 the appropriate time.
12        THE COURT:  All right.  I'll certainly give them
13 that opportunity.
14        I'd also note though I haven't received any loss
15 affidavits in connection with the restitution which is
16 mandatory in this case.
17        MR. LIFSHITZ:  Yes, Your Honor.  So, in light of
18 that, we would not seek restitution.
19        THE COURT:  Are they seeking restitution?
20        MR. LIFSHITZ:  Not as far as I understand it.  I
21 think everyone has been given a chance to submit affidavits.
22        THE COURT:  So, they've been given the affidavits
23 but haven't turned them in; is that correct?
24        MR. LIFSHITZ:  That is my understanding, yes.
25        THE COURT:  In preparation for today's sentencing

4

1  I've reviewed the plea minutes dated February 14th, 2013
2  of Mr. Messina's plea.  I've also reviewed the PSR dated
3  August 2nd, 2013 prepared by the Probation Department as
4  well as the addendum dated November 4th, 2013.  I've also
5  reviewed the government's letters dated October 16, 2013
6  and November 7, 2013; and, finally, I've reviewed defense
7  counsel's sentencing memorandum dated October 9th, 2013, and
8  every single one of the dozens of letters that were submitted
9  on behalf of Mr. Messina under cover of his October 9th, 2013
10 letter.  I've also reviewed defense counsel's letters dated
11 August 14th and August 21st with objections to the PSR, and a
12 letter dated October 31st, 2013 which attached additional
13 letters on behalf Mr. Messina.  I believe it was the letter
14 from Mr. Messina and his companion.
15            Have I overlooked any submissions?
16            MS. McMAHON:  No, Your Honor.
17            MR. LIFSHITZ:  No, Your Honor.
18            THE COURT:  I'd also like to confirm that
19 Mr. Messina is a United States citizen so we need not
20 address consul notification; is that correct?
21            MS. McMAHON:  Yes, Judge.
22            THE COURT:  Thank you.
23            Mr. Messina, are you satisfied with your attorneys,
24 Mr. McMahon and Mr. Mari?
25            THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  And are there any unresolved conflicts
2 or contentions or dissatisfactions between counsel and the
3 client?
4    THE DEFENDANT:  No, Your Honor.
5    THE COURT:  Mr. Messina does appear to be fully
6 alert and to be following these proceedings closely.
7    Would you agree with that observation, Mr. McMahon?
8    MS. McMAHON:  Absolutely, Your Honor.
9    THE COURT:  Do you know of any reason why we should
10 not proceed with Mr. Messina's sentencing today?
11    MS. McMAHON:  No, Your Honor.
12    THE COURT:  Mr. Messina, have you had the
13 opportunity to read the sentencing submissions including the
14 PSR and the submissions by your attorney and the government
15 regarding your sentencing?
16    THE DEFENDANT:  Yes, Your Honor.
17    THE COURT:  Did you have any difficulty
18 understanding those submissions?
19    THE DEFENDANT:  No, Your Honor.
20    THE COURT:  Are you ready now to be sentenced?
21    THE DEFENDANT:  Yes, Your Honor.
22    THE COURT:  All right.  And I trust you've had the
23 opportunity to review all of the sentencing submissions with
24 your lawyer and to ask any questions that you might have?
25    THE DEFENDANT:  Yes, Your Honor.

1  THE COURT:  Thank you.

2  Mr. Messina, you did plead guilty before Judge Reyes
3  on February 14th, 2013.  Do you wish to contest that plea?

4  THE DEFENDANT:  No, Your Honor.

5  THE COURT:  You may recall, sir, that at the plea
6  you were placed under oath, Judge Reyes then advised you of
7  the nature of the charges and asked you questions to ascertain
8  your understanding of the charges, your rights and the
9  consequences of your guilty plea to those charges.

10  In addition, he asked you questions about what you
11  did in connection with the offense and the racketeering acts
12  to which you pled guilty.  Were your answers to Judge Reyes's
13  questions truthful and accurate, sir?

14  THE DEFENDANT:  Yes, Your Honor.

15  THE COURT:  I have reviewed Mr. Messina's plea
16  transcript before Judge Reyes on February 14th of this year
17  and I do find that Mr. Messina's guilty plea on that date was
18  knowing and voluntary and based upon a full understanding of
19  his rights and the consequences of his plea and that there is
20  a factual basis for his plea of guilty.  I therefore do accept
21  Mr. Messina's plea of guilty to Count One of the 15-count
22  superseding indictment, that is a racketeering conspiracy
23  which charged that between February 1989 and January 2011,
24  the defendant, together with others, being a person employed
25  by and associated with the Bonanno organized crime family of

1  La Cosa Nostra, an enterprise that engaged in, and the
2  activities of which affected, interstate and foreign commerce,
3  knowingly and intentionally conspired to violate Title 18,
4  U.S. Code, Section 1962(c), that is, to conduct and
5  participate either directly or indirectly in the affairs of
6  that enterprise through a pattern of racketeering, as defined
7  by Title 18, U.S. Code, Sections 1961(1) and 1961(5).  The
8  defendant agreed that a conspirator would commit at least two
9  acts of racketeering activity in the conduct of the affairs of
10 the Bonanno crime enterprise.
11            I also accepted Mr. Messina's plea to Racketeering
12 Act 2A of the superseding indictment in which he states that
13 he knowingly and intentionally conspired to forcibly steal a
14 property, specifically money, from Joseph Pistone, while armed
15 with a deadly weapon, in violation of New York Penal Law
16 Sections 160.15(2) and 105.10.
17            I further accepted Mr. Messina's plea to
18 Racketeering Act 3 of the superseding indictment which
19 charged illegal gambling, sports betting, which charged
20 that he knowingly and intentionally used wire communications
21 in interstate commerce to assist in placing bets and wagers
22 on sporting events and contests in violation of Title 18,
23 U.S. Code, Section 1084(a) and 2, and that he knowingly and
24 intentionally used one or more facilities in interstate
25 commerce in connection with an illegal gambling business, in

violation of New York Penal Law Section 225.05, and also carried on such unlawful activity in violation of Title 18, U.S. Code, Sections 1952(a)(2)(A) and 2.

I further accepted Mr. Messina's plea to Racketeering Act 5 of the superseding indictment, extortionate extension of credit, which charged that the defendant, together with others, knowingly and intentionally made one or more extortionate extensions of credit to John Doe Number One, in violation of Title 18, U.S. Code, Section 892(a) and 2.

Now, the parties have entered into a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) under which the government has agreed to recommend a sentence of 120 months. Pursuant to Guideline 6B1.2(b), which covers Rule 11(c)(1)(B) pleas, the court may accept the recommendation of the government if it is satisfied either that, first, the recommended sentence is within the applicable guideline range, or, second, that the recommended sentence is outside the applicable guideline range for justifiable reasons and those reasons are set forth with specificity in the statement of reasons form.

As I will describe in detail, although the PSR and the court have calculated the guideline range to be between 360 months to life, the court has calculated that Mr. Messina's effective guideline range is 240 months and, thus, the recommended sentence in the plea agreement falls

1  very significantly below the effective guideline range, 50
2  percent below in fact.  But the government has failed, in the
3  court's view, to articulate any justifiable reason why a
4  downward departure of 120 months, or 50 percent, is justified
5  and the court has not been able to discern any such reason
6  from the submissions by the parties.  To the contrary, the
7  government has described in detail in its sentencing
8  memorandum the very significant role played by Mr. Messina
9  in many serious crimes, often with members or associates of
10 organized crime, or under the auspices of organized crime,
11 which crimes would in fact seem to call for a sentence
12 significantly above the government's recommended sentence of
13 120 months.
14          In its November 7th letter, the government asserts
15 that a sentence of 120 months imprisonment will "adequately
16 reflect the seriousness of the actual offense behavior" and
17 will not "undermine the statutory purposes of sentencing or
18 the Sentencing Guidelines."  The government further states
19 that the "recommended sentence appropriately balances the
20 defendant's criminal history and the seriousness of the
21 defendant's conduct against the significant prosecutorial
22 risks and burdens avoided through a negotiated resolution"
23 because the plea agreement in this case gives the court "the
24 opportunity to impose a reasonable sentence in light of the
25 defendant's acceptance of responsibility, and of permitting

the government to focus its resources on additional offenders and additional threats."

In other words, it appears to the court that the government's recommendation of a sentence that would constitute a dramatic downward departure seems to be based exclusively on the fact that Mr. Messina agreed to plead guilty, which is underscored by the lone citation in its November 7th letter to section 9-27.420 of the United States Attorney's Manual, which only lists various criteria for federal prosecutors to continue in deciding whether to enter into plea agreements.

The commentary to Guideline 6B1.2 contradicts the government's contention that the fact that Mr. Messina entered into a plea agreement is sufficient justification for a downward departure. The commentary to Guideline 6B1.2 states that "the court may not depart below the applicable guideline range merely because of the defendant's decision to plead guilty to the offense or to enter a plea agreement with respect to the offense."

The commentary further provides that "a defendant who enters a plea of guilty in a timely manner will enhance the likelihood of his receiving a reduction in offense level under Guideline 3E1.1 for acceptance of responsibility. Further reduction in offense level or sentence due to a plea agreement will tend to undermine the sentencing guidelines."

1  Moreover, the court is concerned that a departure
2  of the recommended magnitude would be contrary to Title 18,
3  U.S. Code, Section 3553(a)(6), which states that the court
4  shall take into account the need to avoid unwarranted
5  sentencing disparities among defendants with similar records
6  who have been found guilty of similar conduct.  I note that
7  the government's inability to articulate justifiable reasons
8  for such a large downward departure in this case is troubling
9  in light of the fact that the government has sought sentences
10 within the guidelines range for nearly all of the several
11 dozen defendants who pled guilty in related prosecutions and
12 allocuted to acts that were, for the most part, far less
13 serious than the armed robbery conspiracy, extortionate
14 extension of credit, and illegal gambling charge that
15 Mr. Messina has allocuted to.
16       Accordingly, the court finds no justifiable reason
17 for accepting the government's recommended sentence of 120
18 months and I respectfully must reject that recommendation.
19       Now, Mr. Messina does have the right to schedule a
20 Fatico fact-finding hearing at which the parties may offer
21 evidence relevant to sentencing.  Would he like to exercise
22 that right?
23       MS. McMAHON:  Yes, Your Honor.
24       THE COURT:  All right.  Would you like to do that
25 then -- I'd like to schedule it, if we could, next week if

1  that's possible, or I don't know what's necessary in terms of
2  the government's evidence.  We can look ahead a little bit but
3  I do have an increasingly more conflicted calendar as the
4  month progresses.
5              MR. LIFSHITZ:  Your Honor, next week is not possible
6  because I'm on trial beginning on Tuesday before Judge Cogan.
7              THE COURT:  All right.
8              MR. LIFSHITZ:  That will last about a month.  In
9  addition, proving some of these crimes will require marshaling
10 witnesses and other evidence from other parts of the country,
11 particularly the 1989 Maniscalco murder -- solicitation to
12 murder.
13             So, can I talk with my colleague for a moment?
14             THE COURT:  Yes, you may, and maybe consult with
15 Mr. McMahon about a date.
16             (Pause in the proceedings.)
17             MR. LIFSHITZ:  Your Honor, the parties would suggest
18 that we file a joint letter by the end of next week suggesting
19 a schedule because it would be a rather protracted Fatico
20 hearing.  It wouldn't be like the typical Fatico hearing in
21 that we're trying to prove a number of crimes that weren't
22 pled guilty to, it would be more like a trial.
23             THE COURT:  All right.  If you would kindly give me
24 several dates that are good for both parties, I'd appreciate
25 it because I do have trials I think back to back in January,

13

1    so we could do it during December or thereafter.
2                MS. McMAHON:  I have a retrial on a Staten Island
3    murder case which is starting either December 3 or December
4    10.
5                THE COURT:  And how long will that last, sir?
6                MS. McMAHON:  The last trial, the original trial
7    went for five weeks.
8                THE COURT:  All right.  Well, I will say that I
9    would appreciate clarification as to which issues you want the
10   Fatico hearing on.  If it's every disputed issue, I'd like to
11   know that.  You did object to certain statements in the PSR
12   which were based on the probation officer's consultation with
13   the government.
14               MS. McMAHON:  Right.
15               THE COURT:  It is my understanding that the
16   government believes it can prove the facts that are in dispute
17   by a preponderance of the evidence.  I don't know which of
18   those facts beyond those that you identified in your
19   submission you are objecting to or seeking a hearing on.
20               MS. McMAHON:  If there are any other others, Judge,
21   I would promptly give them notice by Monday or Tuesday.
22               THE COURT:  All right.  I'd appreciate some notice
23   too if I could.
24               MS. McMAHON:  When I said the government, I meant
25   filing ECF.

1          THE COURT:  All right.  Thank you.  Then we will
2  have to schedule this.
3          I apologize to the Pistone family, I'm sure this is
4  not a delay they appreciate but I will schedule the hearing
5  accordingly.
6          MS. McMAHON:  Okay.
7          THE COURT:  Thank you all.
8          THE DEFENDANT:  Thank you, Your Honor.
9          THE COURT:  Thank you, sir.
10         (Time noted:  1:10 p.m.)
11         (End of proceedings.)