UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
NEIL MESSINA,

        *Petitioner*,

      v.

UNITED STATES OF AMERICA,

        *Respondent.*
---------------------------------X

**MEMORANDUM & ORDER**

11-CR-31(KAM);
16-CV-3724 (KAM);
16-CV-6774 (KAM)

**KIYO A. MATSUMOTO, United States District Judge**

        On April 4, 2014, this court sentenced Neil Messina ("Mr. Messina" or "petitioner") to an 18-year term of imprisonment and three years of supervised release after Mr. Messina pleaded guilty to Racketeering Conspiracy, 18 U.S.C. § 1962(d), pursuant to a plea agreement with the United States of America (the "Government"). (*See generally* ECF No. 311, Amended Judgment filed May 22, 2014.) Presently before the court are Mr. Messina's petitions to vacate his sentence pursuant to 28 U.S.C. § 2255.[1] For the reasons set forth below, the court respectfully denies and dismisses Mr. Messina's petitions as meritless.

<u>**Background**</u>

**I.    The Indictment**

        On January 12, 2011, a grand jury in the Eastern District of New York returned an indictment charging Mr. Messina

---

[1] All of the relevant filings were filed on the criminal docket.

and three other defendants.  (ECF No. 1, Indictment filed
January 12, 2011, at 1.)  On August 16, 2012, the grand jury
returned a superseding fifteen-count indictment against Mr.
Messina.  (*See generally* ECF No. 190, Superseding Indictment (S-
1) filed August 16, 2012.)

    A. Count One

    Count One charged Mr. Messina with conspiracy to
conduct racketeering activity in violation of 18 U.S.C. Section
1962(c) between February 1989 and January 2011 within the
Eastern District of New York.  (*Id*. at 6-7.)

    **Count One** charged Mr. Messina with nine separate
Racketeering Acts, as asset forth below.  (*See generally Id*.)
**Racketeering Act One** charged Mr. Messina with the conspiracy,
attempt, and solicitation of another to cause the death of
Michele Maniscalco, on or about February 16, 1989 in violation
of New York Penal Law Sections 20.00, 100.10, 105.15, 110.00,
and 125.25(1).  (*Id*. at 7-8.)  **Racketeering Act Two(A)** charged
Mr. Messina with the conspiracy to rob Joseph Pistone, while
armed with a deadly weapon, and in violation of New York Penal
Law Sections 160.15(2) and 105.10, and **Racketeering Act Two(B)**
charged Mr. Messina with the murder of Joseph Pistone while
armed with a deadly weapon in violation of New York Penal Law
Sections 20.00 an 125.25(3), on or about August 17, 1992.  (*Id*.
at 8-9.).  **Racketeering Act Three** charged Mr. Messina with

Illegal Gambling – Sports Betting, including the illegal transmission of wagering information and use of interstate facilities in-aid of racketeering between 2008 and May 2009 in violation of New York Penal Law Section 225.05 and 18 U.S.C. Sections 1084(a) and 2, 1952(a)(2)(A) and 2. (*Id.* at 9-10.) **Racketeering Act Four** charged Mr. Messina with Extortionate Collection of Credit Conspiracy, between January 2007 and January 2011, in violation of 18 U.S.C. Section 894(a)(1). **Racketeering Acts Five and Six** charged Mr. Messina with Extortionate Extension of Credit to John Doe #1 and John Doe #2, respectively, in violation of 18 U.S.C. Sections 892(a) and 2. (*Id.* at 10-11.)

Racketeering Act Seven charged Mr. Messina with Extortionate Collection of Credit Conspiracy in relation to John Doe #3, between approximately December 2009 and March 2010, in violation of 18 U.S.C. Section 894(a)(1) and New York Penal Law, Sections 105.10, 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii), and 105.10. (*Id.* at 11-12.) **Racketeering Act Eight** charged Mr. Messina with Illegal Gambling – Sports Betting, including the transmission of wagering information, between approximately April 2010 and December 2010, in violation 18 U.S.C. Sections 1084(a) and 2, and use of interstate facilities in-aid-of racketeering in violation of 18 U.S.C. Sections 1952(a)(2)(A) and 2, between April 2010 and December 2010. (*Id.* at 12-13.)

3

**Racketeering Act Nine** charged Mr. Messina with conspiracy and participation in extortionate extension and collection of credit from John Doe #4, between approximately April 2010 and January 2011, in violation of 18 U.S.C. Sections 892(a) and 2, and 894(a)(1) and 2. (*Id*. at 14-15.)

B. <u>Other Counts</u>

**Count Two** charged Mr. Messina with Collection of Unlawful Debt Racketeering Conspiracy, between approximately January 2007 and January 2011, in violation of 18 U.S.C. Sections 1961(6), 1962(c), 1963 and 3551 *et seq*., and New York Penal Law Section 190.40. (*Id*. at 15-16.) **Count Three** charged Mr. Messina with Transmission of Wagering Information, between approximately 2008 and May 2009, in violation of 18 U.S.C. Sections 1084(a), 2 and 3551 *et seq*. (*Id*. at 16-17.) **Count Four** charged Mr. Messina with the use of interstate facilities in-aid-of Racketeering between 2008 and May 2009. (*Id*. at 17-18.) **Count Five** charged Mr. Messina with conspiracy to participate in the extortionate collection of credit between January 2007 and January 2011. (*Id*. at 18.) **Counts Six and Seven** charged Mr. Messina with the extortionate extension of credit to John Doe #1, between April 2009 and January 2011, and Jon Doe #2 between September 2009 and December 2010, respectively. (*Id*. at 18-19.)

4

**Count Eight** charged Mr. Messina with Extortionate Collection of Credit Conspiracy from John Doe #3, between approximately December 2009 and March 2010.  (*Id.* at 19-20.) **Count Nine** charged Mr. Messina with Transmission of Wagering Information between approximately April 2010 and December 2010, in violation of 18 U.S.C. Sections 1084(a), 2 and 3551 *et seq*. (*Id.* at 20.)  **Count Ten** charged Mr. Messina with Use of Interstate Facilities in-aid-of Racketeering between approximately April 2010 and December 2010, in violation of 18 U.S.C. Sections 1952(a)(2)(A), 2 and 3551 *et seq*.  (*Id.* at 21.) **Counts Eleven, Twelve, Thirteen and Fourteen** charged Mr. Messina with Extortionate Collection of Credit Conspiracy and Extortionate Extension of Credit, in regard to John Doe #4, between approximately April 2010 and January 2011, in violation of 18 U.S.C. Sections 892(a), 894(a)(1) and 3551 *et seq*.  (*Id.* at 21-23.)  **Count Fifteen** charged Mr. Messina with knowingly and intentionally Using, Carrying and Possessing a Firearm, during and in relation to a crime of violence, to wit: the crime charged in Count One, as well as the knowing and intentional possession of firearms in furtherance of this crime of violence, which firearms were brandished and discharged.  (*Id.* at 24-25.)

## II.  The Plea

Mr. Messina, represented by Gerald J. McMahon, Esq. ("Mr. McMahon"), and Mathew Mari, Esq. ("Mr. Mari"), engaged in

plea negotiations with the Government.[2]  On January 28, 2013, the
Government extended the first plea offer, pursuant to Federal
Rule of Civil Procedure 11(c)(1)(B) ("Rule 11(c)(1)(B)"), which
would carry no mandatory minimum sentence and a 20-year maximum
sentence and fell within an estimated Guidelines range of 324 to
405 months of imprisonment, for an effective range of 20 years,
*i.e.* the statutory maximum.  (ECF No. 333-1, Affidavit of Gerald
J. McMahon ("McMahon Affidavit") ¶ 9.)  On February 4, 2013, the
Government extended a second plea offer under Rule 11(c)(1)(B)
that contained the same terms as the first plea offer, with no
changes to the applicable statutory range of imprisonment or
Guidelines range.  (*Id.*)  Under the first and second plea
offers, Mr. Messina would not be required to allocute to the
murder of Joseph Pistone and or to plead guilty to the Section
924(c) charge.  (*Id.* at 6.)  The second plea offer differed from
the initial offer in that Mr. Messina would allocute to the
extortionate collection of credit from John Doe #1 rather than
conspiracy to commit extortionate collection of credit as to
John Doe #3, the forfeiture provision was removed, and the new
offer included coverage for racketeering and racketeering
conspiracy.  (*Id.* at 5-6 & n.2.)

---

[2] Vincent J. Romano, Esq., initially served as co-counsel.  Mr. Romano moved
to be relieved (ECF No. 192), which was granted on August 21, 2012.  (Dkt
Order dated August 21, 2012.)  Mr. Mari subsequently joined Mr. McMahon as
co-counsel on October 22, 2012.  (ECF No. 206, Notice of Appearance of Mathew
Mari as co-counsel to chief counsel Gerald J. McMahon.)

Having been advised by counsel of these considerations, Mr. Messina decided to accept the agreement offered on February 4, 2013. (*Id.* ¶ 11.) According to Mr. McMahon's Affidavit, the Government "never extended a plea offer under Rule 11(c)(1)(C)" and "never offered a plea that would have 'capped' Mr. Messina's sentence at ten years[.]" (*Id.* ¶¶ 12-13.) The Government's memorandum confirmed Mr. McMahon's statement that a plea with a ten-year cap was never offered by the Government. (ECF No. 332, Response in Opposition dated June 2, 2017 ("Gov. Mem.") at 13-14.) Further, Mr. Mahon averred that the Government advised him that "it would not enter any agreement unless Mr. Messina allocuted to the events underlying either the murder of Pistone or the attempted murder of Maniscalco." (*Id.* ¶ 13.)

The second, signed, plea agreement stipulated that Mr. Messina would plead guilty to Count One charging racketeering conspiracy, 18 U.S.C. Section 1962(d), including Racketeering acts 2(A) (Conspiracy to Rob Joseph Pistone, 3 (Illegal Gambling – Sports Betting), and 5 (Extortionate Extension of Credit – John Doe #1). (Plea Agreement at 2-3.) Count One in the plea agreement carried a maximum term of imprisonment of 20 years with no mandatory minimum, a maximum supervised release term of 3 years, restitution to be determined by the Court, and a fine. (*Id.*) The stipulated adjusted offense level, including a two-

level reduction pursuant to U.S.S.G. Section 3E1.1(a) for
acceptance of responsibility and an additional one-level
reduction pursuant to U.S.S.G. Section 3E1.1(b) for timely
acceptance of responsibility, resulted in an adjusted offense
level of 40, with a range of imprisonment of 324 to 405 months
assuming defendant was within Criminal History Category II.
(*Id.* at 3-4.)  Due to the statutory maximum, the effective range
under the Guidelines was 240 months.  (*Id.* at 4.)  The
Government agreed to recommend that a term of imprisonment of
120 months is appropriate, pursuant to Fed. R. Crim. P.
11(c)(1)(B).  (*Id.*)

        The agreement states that the "defendant understands
that although imposition of a sentence in accordance with the
United States Sentencing Guidelines (the 'Guidelines' and
'U.S.S.G.') is not mandatory, the Guidelines are advisory and
the Court is required to consider any applicable Guidelines
provisions as well as other factors enumerated in 18 U.S.C. §
3553(a) to arrive at an appropriate sentence in this case."
(*Id.* at 2.)  Further, the agreement states that the Government
"will advise the Court and the Probation Department of
information relevant to sentencing, including criminal activity
engaged in by the defendant, and such information may be used by
the Court in determining the defendant's sentence."  (*Id.*)  Mr.
Messina signed directly under the following paragraph reading

that "I have read the entire agreement and discussed it with my attorney.  I understand all of its terms and am entering into it knowingly and voluntarily."  (*Id.* at 9.)

On February 14, 2013, Mr. Messina pleaded guilty before Honorable Magistrate Judge Ramon Reyes, Jr. to Count One of the Superseding Indictment (S-1) charging racketeering conspiracy, 18 U.S.C. § 1962(d).  (ECF No. 218, Transcript of February 14, 2013 Plea Proceeding ("Plea Tr."), at 1.) Magistrate Judge Reyes asked Mr. Messina if he was "satisfied with the representation and advice" his counsel had provided and if he had taken "enough time to talk to them about the decision to enter a guilty plea", to which Mr. Messina responded in the affirmative.  (*Id.* at 7.)  Magistrate Judge Reyes also asked Mr. Messina if he understood that "until your sentencing date, . . . you can't know with any certainty what the guidelines are, whether they'll be grounds to depart from them or whether Judge Matsumoto will impose a non-guideline sentence," to which Mr. Messina affirmed that he did.  (*Id.* at 18.)

Magistrate Judge Reyes then asked Mr. Messina if he understood that the Government's recommendation of 120 months' imprisonment was not binding on the sentencing court and that, if the court did not follow the agreement's sentencing recommendation, this would not be a basis for Mr. Messina to withdraw his guilty plea, and Mr. Messina replied affirmatively.

9

(*Id.* at 20-21.)  Mr. Messina also affirmed that his plea was voluntary, that no one made any promises to him that caused him to plead guilty, and that no one had promised what sentence he would receive from this court if he pleaded guilty.  (*Id.* at 22-23.)  Mr. Messina allocuted to racketeering acts 2(A), 3, and 5, respectively the conspiracy to rob Joseph Pistone that defendant admitted led to Mr. Pistone's death, operation of an illegal gambling business between 2008 and May 2009, and an extortionate extension of credit to John Doe #1.  (*Id.* at 23-25.)

On February 19, 2013, having reviewed the transcript of the proceeding before Magistrate Judge Reyes, this court accepted defendant's plea of guilty to Count One of the Superseding Indictment.[3]  (ECF No. 219, Order Accepting Guilty Plea as to Neil Messina filed February 19, 2013, at 1.)  The court found that Mr. Messina had been informed of the court's consideration of the advisory guidelines and the court's

---

[3] This court also found that during his plea, defendant was informed of and stated under oath that he understood the following: (1) his right to have his plea heard before a District Judge; (2) of his right to plead not guilty; (3) of his right to trial by jury; (4) of his right to be represented by counsel, appointed by the court, if necessary, at the trial and at every other stage of the proceeding; (5) of his right at trial to confront and cross-examine the witnesses against him, to testify and present evidence, to compel the attendance of witnesses, and of his privilege against self-incrimination; (6) of the fact that by pleading guilty he was waiving and giving up these trial rights; (7) of the nature of the count and underlying racketeering acts to which he was pleading; and (8) of the minimum and maximum possible penalty, including imprisonment, fine, term of supervised release and mandatory special assessment, pursuant to statute and the advisory United States Sentencing Commission Guidelines (the "guidelines").  (ECF No. 219, Order Accepting Guilty Plea dated February 19, 2013, at 1-2.)

authority to depart therefrom.  (*Id.* at 2.)  Further, this court
found that defendant averred under oath that he understood Judge
Reyes's questions and statements and that he voluntarily pleaded
guilty, and not as a result of any force, threat, or promises.
(*Id.*)

### III. The Sentence

On November 8, 2013, Mr. Messina appeared before this
court for sentencing.  (ECF No. 317, November 8, 2013 Sentencing
Transcript ("November Sent. Tr."), at 1.)  This court considered
the Government's recommendation that Mr. Messina receive a
sentence of 120 months' imprisonment and found that "it appears
to the court that the government's recommendation of a sentence
that would constitute a dramatic downward departure seems to be
based exclusively on the fact that Mr. Messina agreed to plead
guilty."  (*Id.* at 10.)  This court further noted that the "the
commentary to Guideline 6B1.2 states that 'the court may not
depart below the applicable guideline range merely because of
the defendant's decision to plead guilty to the offense.'"
(*Id.*)

This court also expressed concern that "a departure of
the recommended magnitude would be contrary to Title 18, U.S.
Code, Section 3553(a)(6), which states that the court shall take
into account the need to avoid unwarranted sentencing
disparities among defendants with similar records who have been

found guilty of similar conduct." (*Id.* at 11.)  This court found that the government did not articulate justifiable reasons for "such a large downward departure in this case . . . in light of the fact that the government has sought sentences within the guidelines range for nearly all of the several dozen defendants who pled guilty in related prosecutions" and, therefore, this court respectfully rejected the Government's recommendation. (*Id.*)  During the November 8, 2013 proceeding, Mr. McMahon exercised Mr. Messina's right to schedule a *Fatico* fact-finding hearing.[4] (*Id.* at 11.)

On February 18 and 19, 2014, this court conducted the *Fatico* hearing.  (Dkt. Entry February 18, 2014; ECF No. 314, *Fatico* Hearing Transcript ("*Fatico* Hearing Tr."), at 1.)  The Government presented three cooperating witnesses, two civilian witnesses, and one expert witness, and Mr. Messina called one witness.  (ECF No. 344-1, April 4, 2014 Sentencing Transcript ("April Sent. Tr."), at 26.)  On March 12, 2014, Mr. Messina's counsel and the Government filed post-*Fatico* hearing briefs. (ECF No. 292, *Fatico* Hearing Brief Submitted by Defense Counsel filed March 12, 2014 ("McMahon *Fatico* Br."), at 1.; ECF No. 293, *Fatico* Hearing Brief Submitted by Government filed March 12, 2014 ("Government *Fatico* Br.), at 1.)  On March 24, 2014, the

---

[4] *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).

parties submitted responsive briefs.  (ECF No. 295, Brief in
Response to Defendant's Post-*Fatico* Submission filed March 24,
2014, at 1; ECF No. 296, Reply Brief for Post-*Fatico* Hearing
submitted by Defense Counsel filed March 24, 2014, at 1.)

The Probation Department prepared a Pre-Sentence
Investigation Report ("PSR") in advance of sentencing.  On April
4, 2014, Mr. Messina appeared before this court for sentencing.
(April Sent. Tr. at 1.)  This court addressed Mr. Messina's
objections to the PSR and noted that it had reviewed the
parties' post-*Fatico* submissions.  Both Mr. McMahon and the
Government made statements in support of imposing the 120 month
sentence.  (*Id*. at 15-24.)  This court articulated its
determination that the Government had established by a
preponderance of the evidence at the *Fatico* hearing that: Mr.
Messina was responsible for the solicitation, conspiracy and
attempt to murder Michele Maniscalco (*id*. at 25-29), and Mr.
Messina possessed firearms in the furtherance of the charged
racketeering conspiracy (*id*. at 29), and that he engaged in
loansharking.  (*Id*. at 29.)

The court overruled Mr. Messina's objections to the
PSR describing the murder conspiracy, solicitation, and
attempted murder of Michele Maniscalco pursuant to *United States
v. Massino*, which the Government had proven by a preponderance

13

of the evidence.[5]  (*Id.* at 30.)  Having found the cooperating

witnesses' testimony credible on this point, the court also

overruled Mr. Messina's objection that he provided the gun used

in the Maniscalco shooting.  (*Id.* at 31.)  The court overruled

Mr. Messina's objection to the PSR's reference to his physical

abuse of his girlfriend, but stated that the PSR should be

amended to reflect that Mr. Messina's girlfriend subsequently

repeatedly denied that such physical abuse took place.  (*Id.* at

32.)  This court noted that this PSR reference had no effect on

Mr. Messina's guideline calculations.  (*Id.*)  Further, this

court overruled Mr. Messina's objection to the PSR's reference

to his prior arrest for robbery in Queens County.  (*Id.*)

         This court accepted Mr. Messina's objection in part to

paragraphs 20 and 21, which stated that he planned home invasion

robberies with a co-conspirator; the resulting PSR changes had

no effect on the guideline calculations.[6]  (*Id.* at 31.)  The

court also amended paragraphs 34 through 44 to replace

---

[5] This court, citing *United States v. Massino*, 546 F.3d 123 (2d Cir. 2008),
stated that "[c]onduct is relevant if it was committed, aided, abetted,
counseled, commanded, induced, procured or willfully caused by the defendant
during the commission of the offense of conviction and preparation for that
offense or in the course of attempting to avoid detection or responsibility
for that offense." (April Sent. Tr. at 30.)
[6] This court found that the government did not present evidence concerning the
robbery in Old Brookville and therefore the reference to this robbery should
be stricken from paragraph 21 of the PSR and that this paragraph should be
removed.  (April Sent. Tr. at 31.)  The court also found that paragraph 20
should also be amended to reflect these changes.  (*Id.*)

references to loanshark or loansharking with the term loan or loaning.  (*Id.* at 33.)

This court found that, because Mr. Messina admitted during his plea allocution that he knew at least one of the co-conspirators would be armed and that he intended for them to rob Joseph Pistone, paragraphs 67 to 72 of the PSR should be amended to reflect that Mr. Messina allocuted to the robbery conspiracy set forth in Racketeering Act of 2(A) of Count One, consistent with Probation's and the court's independent guidelines calculation.[7]  (*Id.* at 36-37.)  This court further noted that the PSR took into account, for guidelines calculations, the Racketeering Acts that Mr. Messina allocuted to as well as Racketeering Acts 1, 4, and 6 through 9, Counts Two through Eleven, and Counts Fourteen through Fifteen of the Superseding Indictment.  (*Id.* at 37.)  The court noted that the Government and defense counsel did not object to the inclusion of the other acts in the PSR, with the exception of Racketeering Act 1, and that including the other acts in the Guidelines calculation did not change the effective Guidelines range of 240 months.  (*Id.* at 37-38.)

---

[7] This court, citing *United States v. Molina*, 105 F.3d 1118 (2d Cir. 1997), stated "that it was reasonably foreseeable to Mr. Messina that his coconspirators would murder someone in the course of the robbery."  (April Sent. Tr. at 37.)

This court then turned to imposition of the sentence and proceeded with a review of Mr. Messina's prior conviction, articulating the relevant criminal history points received under Guideline 4A1.1(d).  (*Id.* at 38.)  The PSR calculated an advisory Guidelines total adjusted offense level of 41.  (*Id.*)  The PSR calculated that Mr. Messina had three criminal history points from his previous conviction for conspiracy to commit arson and two additional points for the racketeering conspiracy pursuant to Guideline 4A1.1(d) for a total of five criminal history points placing him in criminal history category III.[8] (*Id.*)  As a result, the advisory guidelines range of imprisonment was 360 months to life, though the effective range of the sentence was the statutory maximum sentence of 240 months pursuant to Guideline 5G1.1(a).  (*Id.*)

This court independently calculated Mr. Messina's offense level and adjustments finding that the PSR calculations were correct.  (*Id.* at 39.)  The court found Mr. Messina responsible, pursuant to Guideline 1B1.3(a)(1)(B) and (a)(3), for the murder of Joseph Pistone by his co-conspirators.  (*Id.* at 40.)  This court stated that it could not discern a justifiable reason for "a downward departure of 120 months or 50

---

[8] The Plea agreement had calculated a total adjusted offense level of 40 and estimated that Mr. Messina would be placed in criminal history category II, resulting in a guidelines range of 324 to 405 months.  (Plea Agreement at 3-4; April Sent. Tr. at 41.)

percent . . . because the parties have not offered any reason
for such a departure other than the fact that Mr. Messina has
pled guilty and the parties wish to avoid the risks of a trial."
(*Id.* at 46-47.)  The court noted that Guideline 6B1.2, which
applies to Rule 11(c)(1)(B) pleas, advises that the court should
accept the sentencing recommendation if it is satisfied that
either 1) the recommended sentence is within the applicable
Guidelines range, or 2) the recommended sentence is outside the
applicable range for justifiable reasons, and those reasons are
set forth with specificity in the statement of reasons form.
(*Id.* at 47.)  The court inquired as to whether the Government or
the defense wished to offer any other reasons why a sentence of
10 years was appropriate, other than the fact that Mr. Messina
pled guilty and wished to avoid the risk of trial.  (*Id.* at 48.)

The court then imposed a sentence of 18 years (216
months) of incarceration, a three-year supervised release term,
and restitution of $120,611.30 for conspiracy to commit
racketeering (Count One) on May 22, 2014.[9]  (*Id.* at 56-57; ECF
No. 311, Amended Judgment filed May 22, 2014, at 1-4.)

**IV.  Additional Procedural History**

---

[9] During sentencing, this court "[left] open the possibility of amending the
judgment to include restitution to the victims who submit a victim impact
statement." (April Sent. Tr. at 58.)  Therefore, the amended judgment
imposed an additional term of restitution to the original April 4, 2014
judgment.

After judgment was entered, Mr. Messina filed a Notice of Appeal.[10]  (ECF No. 301, Notice of Appeal dated April 17, 2014.)  Brendan White, Esq., represented Mr. Messina on his appeal.  (ECF No. 315, Notice of Attorney Appearance Brendan White filed August 1, 2014, at 1.)  On December 17, 2015, the Second Circuit issued a mandate affirming the sentence after briefing and oral arguments.  (ECF No. 318, Mandate of USCA Filed December 17, 2015, at 1.)

On July 1, 2016, Mr. Messina submitted, *pro se*, a petition for *habeas* relief pursuant to 28 U.S.C. § 2255, seeking to correct his sentence on the basis of *Johnson v. United States*, 135 S. Ct. 2551 (2015).  (ECF No. 322, Motion to Vacate Judgment under 28 U.S.C. Section 2255 filed July 1, 2016 ("Pet."), at 1.)  On July 19, 2016, Mr. Messina moved (ECF No. 323, Letter as to Neil Messina dated July 19, 2016), and the court agreed, to hold the petition in abeyance.  (Dkt. Entry dated July 19, 2016.)  On December 5, 2016, Mr. Messina filed, *pro se*, a motion requesting that the court set aside his sentence due to additional claims regarding the alleged ineffective assistance of his sentencing counsel, and the Government's alleged breach of the plea agreement.  (*See*

---

[10] Mr. Messina filed an amended notice of appeal on April 18, 2014.  (ECF No. 302, Amended Notice of Appeal dated April 18, 2014, at 1.)

*generally* ECF No. 328, Motion to Vacate Pursuant to 28 U.S.C. Section 2255 filed December 5, 2016 ("Second Pet.") at 1.)[11]

On March 1, 2017, Alan Nelson, Esq. ("Mr. Nelson") moved the court to appoint him as counsel to represent Mr. Messina for *habeas* relief (ECF No. 329, Motion to Appoint Counsel, at 1), which the court granted. (Dkt. Entry dated March 2, 2017.) On June 2, 2017, the Government filed its opposition to Mr. Messina's petition for *habeas* relief. (ECF No. 332, Gov. Mem. at 1.) On June 10, 2017, Mr. Nelson, on behalf of Mr. Messina, requested an extension of time to file a reply Memorandum of Law in Support of the Petition (ECF No. 334, Motion for Extension of Time Filed June 10, 2017), which this court granted on June 12, 2017. (Dkt. Entry dated June 12, 2017.) On July 19, 2017, Mr. Nelson submitted Mr. Messina's reply to the Government's opposition memorandum. (ECF No. 336, Petitioner's Memorandum in Support Filed June 19, 2017 ("Pet. Reply") at 1.)

On March 21, 2019, Mr. Messina's counsel filed a memorandum in support of petitioner's motion to vacate his sentence that raised the following additional claim: (1) ineffective assistance of counsel for failure to argue that

---

[11] Citations to the second petition and third petition refer to the stated page numbers rather than the ECF pagination. Further citation references to the opposition brief, second opposition brief, and petitioner's reply refer to the stated page numbers rather than the ECF pagination.

acceptance of responsibility is a ground for departure or variance pursuant to 18 U.S.C. Section 3553(A)(6) when Guideline 5G1.1(a) nullified the Guideline 3E1.1 Adjustment; and that (2) Mr. Messina was denied the benefit of participation in his defense because his counsel requested a *Fatico* hearing without consulting Mr. Messina.  (*See generally* ECF No. 338, Memorandum in Support of Motion to Vacate Sentence Filed March 21, 2019 ("Third Pet.").)  On June 19, 2020, this court ordered the Government to respond to petitioner's supplemental brief.  (Dkt. Entry dated June 19, 2020.)  On July 10, 2020, the Government submitted its response.  (ECF No. 354, Response in Opposition to Motion to Vacate Sentence dated July 10, 2020 ("Second Gov. Mem.") at 20.)

## Standard of Review

"A prisoner in custody under sentence of a [federal court] claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  The court "shall vacate and set the judgment aside" if the court finds that "there has been such a denial or infringement of the constitutional rights of the prisoner as to

render the judgment vulnerable to collateral attack." *Id.* § 2255(b).

To respect the finality of criminal convictions, relief under 28 U.S.C. Section 2255 ("Section 2255") is generally available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  The Second Circuit has emphasized that "narrowly limiting the relief permitted under § 2255" is to ensure "a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place . . ." *Id.* (citing *United States v. Addonizio*, 442 U.S. 178, 184 & n.11 (1979)).

## Discussion

Generally, an amended petition would replace a petitioner's original petition. *See, e.g.*, *King v. Cunningham*, 442 F. Supp. 2d 171, 178 (S.D.N.Y. 2006).  Mr. Messina's second and third petitions, which Mr. Messina characterizes as amended petitions, do not restate the claims set forth in his original petition, but rather assert additional grounds for relief distinct from his original petition.

21

Nevertheless, the court will consider the second and third petitions to be supplemental rather than amended petitions, and will discuss the claims raised by all three petitions. *See Channer v. Dep't of Homeland Sec.*, 406 F.Supp.2d 204, 208 (D. Conn. 2005) ("Ordinarily, a supplemental pleading does not replace the original pleading."); Fed. R. Civ. P. 15(d).

Together, Mr. Messina's petition and supplemental petitions move for *habeas* relief pursuant to Section 2255 on the grounds that: (1) *Johnson v. United States*, 135 S. Ct. 2551 (2015), warrants a correction of his sentence; (2) he was rendered ineffective assistance of counsel at pleading and sentencing; (3) the Government violated the plea agreement through its misconduct; (4) he was rendered ineffective assistance of counsel by counsel's failure to address the court regarding a ground for departure pursuant to 18 U.S.C. Section 3553(A)(6); and (5) he was denied the benefit of participation in his defense because his counsel requested a *Fatico* hearing without his input.  For the reasons set forth below, the court finds these claims are entirely without merit and, accordingly, denies and dismisses Mr. Messina's petitions.

## I.   Preliminary Considerations

The court begins its discussion by addressing the threshold issues of (A) whether the court may decide the

petitions based on the record, or whether the court is required to first conduct an evidentiary hearing; and (B) whether Mr. Messina's claims, as set forth in his supplemental petitions, are considered timely.

A. <u>No Evidentiary Hearing</u>

The court must first decide whether the claims can be addressed on the submitted record before the court, or whether Mr. Messina's request for an evidentiary hearing should be granted. "In ruling on a motion under § 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255). No hearing is necessary "where the allegations are 'vague, conclusory, or palpably incredible.'" *Id.* (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). A hearing is necessary only where the petition "set[s] forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." *Id.*

Even if a hearing is warranted, it is "within the district court's discretion to determine the scope and nature of a hearing." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011) (citing *Chang v. United States*, 250 F.3d 79, 85–86 (2d

Cir. 2001)).  Courts need not hold a full testimonial hearing
where "the testimony of [petitioner] and his trial counsel would
add little or nothing to the written submissions." *Chang*, 250
F.3d at 86.  Courts frequently "consider the 'trial record,
letters, documents, exhibits, affidavits and written
interrogatories' and may adopt a 'middle road' approach,
declining to hold a hearing and 'deciding disputed facts on the
basis of written submissions.'" *Rosario v. United States*, 2019
WL 5260784, at *3 (S.D.N.Y. Oct. 17, 2019) (quoting *Pham v.
United States*, 317 F.3d 178, 184 (2d Cir. 2003)).

        Mr. McMahon and Mr. Mari submitted affidavits in
support of the Government's opposition to Mr. Messina's petition
to vacate his sentence.  Mr. McMahon filed an eight-page
affidavit, which contradicted Mr. Messina's generalized
assertions of ineffective assistance of counsel at pleading.
(*See generally* McMahon Affidavit.)  Mr. Mari submitted a two-
page affidavit, which stated that his "recollection is that Mr.
McMahon's affidavit states the facts correctly in every
respect." (ECF No. 335-1, Mathew J. Mari Affidavit ("Mari
Affidavit") ¶ 2.)  Because the record before the court,
including the plea, sentencing and *Fatico* transcripts, as well
as counsels' affidavits, is sufficient for the court to decide
the issues raised in Mr. Messina's petitions, the court finds
that a testimonial evidentiary hearing would add "little to

nothing" to the court's adjudication of Mr. Messina's *habeas* claims.

### B. Timeliness of Claims Raised in Third Petition

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on the filing of a Section 2255 petition.  Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Mr. Messina filed his original petition and second petition before the limitations period expired on December 17, 2016.  More than two years after the statute of limitations had run under AEDPA, on March 21, 2019, Mr. Messina submitted a third petition, characterized as an "amended motion to vacate", pleading new claims in support of his Section 2255 petition.  (Third Pet. at 12.)  Because the third petition was filed after the statute of limitations expired in December 2016, any new claims are time-barred.  *See* 28 U.S.C. § 2255(f)(1).  As the United States Supreme Court has stated, "If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim," the "limitation period would have slim significance."  *Mayle v. Felix*, 545 U.S. 644, 662 (2005).  In *Mayle*, "the Supreme Court limited claims in an amended petition to those that arose from the same core facts alleged in the original petition, not those related generally to petitioner's

trial, conviction, or sentence." *Gibson v. Artus*, 407 F. App'x 517, 519 (2d Cir. 2010) (summary order).

Mr. Messina's original and second petition assert the following claims: (1) *Johnson v. United States* warrants a correction of petitioner's sentence (*See generally* Pet.); (2) he was rendered ineffective of counsel at pleading and sentencing because counsel failed to accept a plea agreement under Rule 11(c)(1)(C) (Second Pet. at 5), failed to revisit the possibility of a fixed term plea or withdraw of the guilty plea (*id.* at 3-4), failed to fully inform Mr. Messina of the consequences of the plea agreement (*id.* at 4.), failed to consult Mr. Messina before requesting a *Fatico* hearing (*id.*), and failed to "require that the Government 'honor both the letter and the spirit of the plea recommendation'" (*id.* at 14); and (3) the Government violated the plea agreement through its misconduct. (*Id.* at 18-19.)

In his third petition, Mr. Messina asserts two additional claims: (1) that counsel was ineffective for failing to address the court regarding a ground for departure or variance pursuant to 18 U.S.C. Section 3553(A)(6); and (2) he was denied the participation in his defense because counsel requested a *Fatico* hearing without his consultation. (*See generally* Third Pet.)

Mr. Messina does not provide a reason why the ineffective assistance claim in his third petition could not have been asserted in his original or second petition, before the statute of limitations under AEDPA expired. *See Beckford v. United States*, 2017 WL 4286615, at *6 (E.D.N.Y. Sept. 26, 2017) ("Notably, Petitioner does not provide any reason why his additional claims could not have been asserted at the time of his original Petition."). The failure to raise claims within the statute of limitations flies against the purpose of AEDPA, which is "to advance the finality of criminal convictions." *Mayle*, 545 U.S. at 662 (citing *Rhines v. Weber*, 544 U.S. 269, 276 (2005); *see also Alnutt v. United States*, 588 F. App'x 45, 47 n.1 (2d Cir. 2014) (summary order) ("This principle is even more salient in habeas proceedings because of AEDPA's one year filing deadline, which bars claims not raise in the original petition or motion if the belatedly asserted claims articulate a new ground for relief.") By Mr. Messina's own admission, the facts and case law purportedly in support of this claim existed at the time of sentencing. (Third Pet. at 7.)

Furthermore, Mr. Messina does not raise any of the statutory exceptions to the one-year statute of limitations

provided pursuant to 28 U.S.C. Section 2255(f).[12]  Nor does Mr.

Messina assert that his claim should be equitably tolled.  (*See*

*generally* Third Pet.)  "To be eligible for equitable tolling, a

petitioner must 'demonstrate a causal relationship between the

extraordinary circumstances on which the claim for equitable

tolling rests and the lateness of his filing, a demonstration

that cannot be made if the petitioner, acting with reasonable

diligence, could have filed on time notwithstanding the

extraordinary circumstances.'"  *Rivera v. United States*, 448 F.

App'x 145, 146 (2d Cir. 2011) (quoting *Valverde v. Stinson*, 224

F.3d 129, 134 (2d Cir. 2000)).  Further, the "usual problems

inherent in being incarcerated do not justify equitable

tolling," and the conduct must be "far enough outside the range

of behavior that reasonably could be expected by a client that

they may be considered 'extraordinary.'"  *Baldayaque v. United*

*States*, 338 F.3d 145, 152 (2d Cir. 2003).  Reviewing the record,

---

[12] 28 U.S.C. Section 2255(f) outlines the following exceptions to the one-year
limitation period:
 (2) the date on which the impediment to making a motion created by government
 action in violation of the Constitution or laws of the United States is
 removed, if the movant was prevented from making a motion by such
 governmental action;

 (3) the date on which the right asserted was initially recognized by the
 Supreme Court, if that right has been newly recognized by the Supreme Court
 and made retroactively applicable to cases on collateral review; or

 (4) the date on which the facts supporting the claim or claims presented
 could have been discovered through the exercise of due diligence.

28 U.S.C § 2255(f).

the court does not find any basis for equitable tolling of Mr. Messina's ineffective assistance of counsel claim.

An ineffective assistance claim does not automatically relate back on the basis that Mr. Messina alleged ineffective assistance of counsel claims in his second petition. *See Soler v. United States*, 2010 WL 5173858, at *4 (S.D.N.Y. Dec. 20, 2010) ("even an ineffective assistance of counsel claim, when alleging a different ground for ineffective assistance, does not relate back to an earlier ineffective assistance claim"); *see also Desrosiers v. Phillips*, 2008 WL 4469594, at *7 n.5 (E.D.N.Y. Oct. 3, 2008) ("[I]t is now fairly well-established that ineffective assistance of counsel claims in the habeas context do not relate back to one another merely because they both involve counsel's allegedly deficient performance"). The court, however, disagrees with the Government's assertion that Mr. Messina's ineffective assistance of counsel claim in his third petition does not relate back to his timely filed second petition. (Second Gov. Mem. at 17.)

Mr. Messina's ineffective assistance claim in his third petition relates back to his second petition because it is not "separate in both time and type" from his claim in his second petition that he was rendered ineffective assistance at sentencing due to counsel's request for a *Fatico* hearing. *Veal v. United States*, 2007 WL 3146925, at *5 (S.D.N.Y. Oct. 9, 2007)

(collecting cases).  Both claims assert an ineffective assistance of counsel claim in respect to counsel's allegedly deficient performance at sentencing and are not within "separate and distinct phases of the case." *Id*. at *6.  Thus, the court proceeds to consider the merits of Mr. Messina's ineffective assistance of counsel claim in his third petition.  *See Farrell v. Ercole*, 2011 WL 8198114, at *12 (S.D.N.Y. Dec. 8, 2011) ("Petitioner's [] claim in the amended petition . . . regarding his trial counsel's ineffectiveness at sentencing arguably does relate back to a claim from the original petition – that his sentence was unconstitutional and excessive.").

**II.  Grounds for Relief**

For the reasons set forth below, the court finds the five grounds raised in Mr. Messina's first, second and third petitions are without merit.

A. Ground One: *Johnson v. United States* Claim

In his original petition, Mr. Messina argues that the two Section 924(c) charges should not be counted against him as a "crime of violence," pursuant to 18 U.S.C. Section 1962(d), because the Supreme Court's decision in *Johnson* struck down the "identical" residual clause in the career offender provision of the Sentencing Guidelines Section 4B1.2(a)(2).  (Pet. at 2.) This claim is without merit.

The Supreme Court struck down the residual clause of the Armed Career Criminal Act ("ACCA"), pursuant to 18 U.S.C. Section 924(e)(2)(B)(ii), as unconstitutional. *Johnson v. United States*, 135 S. Ct. 2551, 2554 (2015). The ACCA's residual clause defined a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that - (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involved conduct that presents a serious potential risk of physical injury to* another." *Id.* at 2555-56 (emphasis in original). The Supreme Court found that the residual clause violated defendant's right to due process because it left "grave uncertainty about how to estimate the risk posed by a crime." *Id.* at 2557. The Supreme Court has also made clear that *Johnson* "announced a substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

Mr. Messina argues that this court held him "accountable for the (2) two 924(c) [charges] pursuant [to] 18 U.S.C. Section 924(c)" and that "these charges should not [have] be[en] counted as a 'crime of violence'" during his sentencing. (Pet. at 2.) Further, Mr. Messina asserts that it "follows from *Johnson* that the identical residual clause in the career offender provision of the Sentencing Guidelines (U.S.S.G.

Section 4B1.2(a)(2)), which requires the same categorical analysis, is also void for vagueness." (*Id.*)

First, Mr. Messina's assertion that this court improperly considered his Section 924(c) charges as "crimes of violence" during his *Fatico* hearing fail. (Pet. at 2.) Mr. Messina pled guilty to Count One, racketeering conspiracy, and was sentenced under 18 U.S.C. Section 1962(d). (*See generally* Plea Tr.) On the Government's motion, the court dismissed the remaining counts, including the Section 924(c) charges within Count Fifteen, against Mr. Messina. (*See generally* ECF No. 298, Judgment Filed April 9, 2014.) Though Mr. Messina allocuted to the conduct in Count Fifteen, this court expressly stated that "including these other acts [,including Count Fifteen,] ultimately does not change Mr. Messina's effective guidelines range of 240 months," on Count One. (April Sent. Tr. at 38.)

The court considered Mr. Messina's possession, carrying, and use of firearms in the furtherance of a "crime of violence" during the *Fatico* hearing. (Plea Tr. at 25.) As the court stated at sentencing, "[c]onduct is relevant if it was 'committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.'" *Massino*, 546 F.3d at 135

32

(citing U.S.S.G. § 1B1.3(a)(1)). Relevant conduct to a conviction of a racketeering conspiracy "may include 'underlying predicate acts,' even if not proven at trial beyond a reasonable doubt, as long as the sentencing court finds that they were proven 'by the lower preponderance of the evidence standard.'" *Id.* (quoting *United States v. Yannotti*, 541 F.3d 112, 129 (2d Cir. 2008)).

In the present case, the court found "by a preponderance of the evidence that the defendant possessed firearms in furtherance of the charged racketeering conspiracy." (April Sent. Tr. at 29.) Further, Mr. Messina does not challenge the court's reliance on U.S.S.G. Section 1B1.3(a)(1)(B) and (a)(3) to consider his relevant conduct at the *Fatico* hearing, and the court does not find that it acted improperly in considering Mr. Messina's possession of firearms in the furtherance of the racketeering conspiracy under the advisory Guidelines. (*Id.* at 40.)

Second, Mr. Messina's *Johnson* challenge to his sentence on the basis that U.S.S.G. Section 4B1.1(a)(2), the residual clause, is no longer valid, is without merit. Mr. Messina was not sentenced as a "Career Offender" pursuant to U.S.S.G. § 4B1.1. The PSR, and this court's independent calculation, found that Mr. Messina had a total of five criminal history points pursuant to Guideline 4A1.1(d). (*Id.* at 38.)

The court did not make any reference to Guideline 4B1.1, nor did the court characterize Mr. Messina as a "Career Offender." (*See generally id.*)

Even if this court had sentenced Mr. Messina as a "Career Offender," Mr. Messina's *Johnson* vagueness challenge would be unsuccessful. Prior to its amendment[13] in August 2016, the residual clause of Guideline Section 4B1.2(a)(2) stated that the term "crime of violence" included any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Nunez v. United States*, 954 F.3d 465, 467-68 (2d Cir. 2020). The Supreme Court held that "the Guidelines are not subject to a vagueness challenge under the Due Process Clause" because the Guidelines, post-*Booker*, are advisory and "do not fix the permissible range of sentences." [14]  *Beckles v. United* States, 137 S. Ct. 886, 892 (2017). Further, in reviewing a recent pre-*Booker* vagueness challenge to Section 4B1.2(a)(2), the Second Circuit has further emphasized that *Johnson* did not "render the residual clause of the mandatory Career Offender Guideline vague, as required for Section 2255 purposes." *Nunez*, 954 F.3d at 469.

---

[13] The United States Sentencing Commission, *Amendment to the Sentencing Guidelines*, U.S.S.C., Jan. 21, 2016, at 2., https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20160121_RF.pdf
[14] Mr. Messina was sentenced in 2014, *i.e.* post-*Booker*. *See United States v. Booker*, 543 U.S. 220 (2005).

Therefore, Mr. Messina's challenge to the sentencing decision on the basis of *Johnson* is without merit and is respectfully denied.

B. Ground Two: Ineffective Assistance of Counsel at Pleading and Sentencing

Mr. Messina asserts that Mr. McMahon and Mr. Mari rendered ineffective assistance of counsel for: (i) entering a plea agreement binding both parties to recommend a sentence under Rule 11(c)(1)(B), rather than under Rule 11(c)(1)(C) (Second Pet. at 15); (ii) failing to revisit the possibility of a fixed term plea or withdrawing the plea (*id*. at 3-4); (iii) failing to fully inform Mr. Messina of the consequences of such a plea (*id*. at 4); (iv) failing to consult with Mr. Messina before requesting a *Fatico* hearing (*id*); and (v) failing to "require that the Government 'honor both the letter and the spirit of the plea recommendation.'" (*Id*. at 14.)  The court considers each of petitioner's assertions below.

1. *Legal Standard*

In reviewing an ineffective assistance of counsel claim, courts must apply the "highly demanding" standard set forth in *Strickland v.* Washington, 466 U.S. 668 (1984).  *See Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).  A "defendant's Sixth Amendment right to counsel attaches at all critical stages in the proceedings 'after the initiation of formal charges,'

35

which has been held to include plea negotiations." *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998) (citing *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996)) (internal citations omitted); *see also Lafler v. Cooper*, 566 U.S. 156, 162 (2012).

Under *Strickland*, a petitioner claiming ineffective assistance of counsel must satisfy a two-prong test: "(1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 688-90). The district court need only consider the second prong: "where 'it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice [than on the ground of objectively unreasonable performance] . . . that course should be followed." *Parker v. Ercole*, 666 F.3d 830, 834 (2d Cir. 2012) (quoting *Strickland*, 466 U.S. at 697).

The first prong of the *Strickland* test "asks whether a 'counsel's representation fell below an objective standard of reasonableness.'" *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). "This requires showing that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 687, 689.  With respect to plea offers, "[c]ounsel's professional advice to the client should entail an explanation of: the terms of the plea offer, the 'strengths and weaknesses' of the client's case, and the difference between the sentencing exposure presented in the plea offer and that which the client would most likely face if he were convicted at trial." *Reese v. United States*, 317 F. Supp. 3d 838, 846 (S.D.N.Y. 2018) (citing *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000)).

The second prong of the *Strickland* test requires that the petitioner "show[] that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Reese*, 317 F. Supp. 3d at 846 (quoting *Strickland*, 466 U.S. at 693-94).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Showing only that counsel's errors had "some conceivable effect" on the outcome is not enough to satisfy the prejudice prong, but "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693.

2.  *Ineffective Assistance of Counsel Ground One: Failure to Accept a Plea Agreement Pursuant to Rule 11(c)(1)(C)*

Mr. Messina focuses his attack on an alleged rejection of a plea agreement under Rule 11(c)(1)(C) by his counsel.  Mr. Messina asserts that "[f]or unknown, indeed unfathomable reasons, counsel pursued a course of action that fell well below the standards of *Strickland*" because "[t]he decision to reject a fixed 10 year term to pursue a lesser sentence was a decision that would not have been similarly made by 1 in a 100 other attorneys."  (Second Pet. at 15.)  This claim is wholly unsupported by the record.

Mr. Messina does not contradict Mr. McMahon's affidavit, which avers that counsel informed Mr. Messina that "if he went to trial and lost as to the Pistone murder or the Section 924(c) count, he would face a maximum sentence of life imprisonment."  (McMahon Affidavit ¶ 6.)  Mr. McMahon also affirms that he "further advised [Mr. Messina] that, in the event of a conviction at trial, it was a realistic possibility that a term of life, or another significant term that would encompass the remainder of his life, would be imposed, particularly in light of the serious allegations regarding Pistone and Maniscalco."  (*Id.*)  Mr. McMahon states that "Mr. Messina appeared to clearly understand all of this advice."  (*Id.* ¶ 7.)

Further, there is no factual basis in the record supporting petitioner's allegation that the Government had ever offered a plea agreement pursuant to Rule 11(c)(1)(C) to bind the Court to a fixed term of 10 years.  Mr. McMahon affirms that he and Mr. Mari discussed with "Mr. Messina the possibility of pleading guilty pursuant to Rule 11(c)(1)(B) or Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure."  (*Id.*)  Mr. McMahon states that he explained the risks and benefits associated with both, specifically that the court would not be bound by a plea agreement under 11(c)(1)(B) and that he could not promise that the court would accept a plea under Rule 11(c)(1)(C).  (*Id.*)

Based on counsel's advice, Mr. Messina did not request an agreement under Rule 11(c)(1)(C), but rather an agreement under Rule 11(c)(1)(B), which would allow the defense to advocate in favor of a sentence below ten years.  (*Id.* ¶ 8.)  Mr. McMahon definitively states that Mr. Messina made no request for an agreement under Rule 11(c)(1)(C), and that "Mr. Messina's expectation that he would receive a sentence below ten years" led to his refusal to enter such an agreement.  (*Id.* ¶ 12.)  The Government also states that it did not offer a plea agreement pursuant to Rule 11(c)(1)(C) because defense counsel never made such a request, and the Government only extended the two plea agreements under Rule 11(c)(1)(B), as previously mentioned.  (Gov. Mem. at 14.)

In light of his counsel's affidavits and the
Government's statements, which the court has no reason to doubt,
the court cannot credit Mr. Messina's "highly self-serving"
assertions that counsel failed to accept a plea agreement under
Rule 11(c)(1)(C).[15]  *Chang*, 250 F.3d at 84, 86.  In *Strickland*,
the Supreme Court stated that "strategic choices made after
thorough investigation of law and facts relevant to plausible
options are virtually unchallengeable." *Strickland*, 466 U.S. at
690.  Therefore, "[m]indful of the pitfalls inherent in second-
guessing counsel's trial [and plea negotiation] strategy," the
court does not find that Mr. Messina's defense counsel fell
below an objective standard of reasonableness in not requesting
a plea agreement pursuant to Rule 11(c)(1)(C).  *Lake v. United
States*, 732 F. Supp. 2d 156, 161 (E.D.N.Y. 2010).

Notably, Mr. Messina is also unable to show prejudice
from counsel's decision to pursue a Rule 11(c)(1)(B) rather than
a Rule 11(c)(1)(C) agreement.  In order to demonstrate prejudice

---

[15] Mr. Messina states in a declaration appended to his second petition that
Mr. McMahon's statements to *Gangland News*, a paid subscription site covering
the American mafia, confirmed that he had been offered a plea deal pursuant
to Rule 11(c)(1)(C).  (ECF No. 328, Mr. Messina Declaration ("Messina Decl.")
¶¶ 4, 5.)  Mr. Messina includes the article from *Gangland News* titled
"Gangster Gets 18 Years For 1992 Robbery Murder of Man and His Dog" in which
Gangland News paraphrases Mr. McMahon, stating, "his client had been offered
a guaranteed ten-year plea agreement, but had rejected it so he would be able
to seek a lower sentence than what the government agreed to recommend." (ECF
No. 328, Gangland News Article dated April 10, 2014, at pp. 39.)  Beyond the
impropriety of interpreting a paraphrased, hearsay news report of Mr.
McMahon's statements, it is contradicted by Mr. McMahon's and Mr. Mari's
affidavits, as well as the Government's statements that such a plea agreement
was never offered.

under *Strickland*, a petitioner must also show that "there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Missouri v. Frye*, 132 S. Ct. 134, 148 (2012). Mr. Messina makes a vague conclusory assertion in his reply that "it is likely that the prosecutor and the court would have accepted a guilty plea pursuant to a Rule 11(c)(1)(C) plea agreement, had it been offered by Mr. Messina." (Pet. Reply at 28.) The record does not support such a finding that the court would have accepted a binding Rule 11(c)(1)(C) sentencing agreement, for reasons the court articulated at Mr. Messina's sentencing.

During the November 8, 2013 sentencing proceeding, the court rejected the sentencing recommendation pursuant to Rule 11(c)(1)(B) for reasons discussed above, most notably because the government did not articulate justifiable reasons for "such a large downward departure in this case . . . in light of the fact that the government has sought sentences within the guidelines range for nearly all of the several dozen defendants who pled guilty in related prosecutions." (November Sent. Tr. at 11.) Based on the reasons this court articulated, it is not clear as to how a Rule 11(c)(1)(C) agreement would have made the agreement more amenable to being accepted, nor does Mr. Messina articulate any reasons within his pleadings to support his

assertion.  Thus, Mr. Messina cannot be found to have been
prejudiced by the defense decision to pursue a plea agreement
under Rule 11(c)(1)(B), and this claim must be respectfully
denied.

> 3.  *Ineffective Assistance of Counsel Ground Two:*
> *Failure to Request to Withdraw the Guilty Plea or*
> *Revisit Possibility of Other Plea Agreements*

Mr. Messina also asserts that his counsel rendered
ineffective assistance because "[c]ounsel allowed petitioner's
plea to remain with no motion to withdraw," and "there were no
discussions regarding the withdrawal of the plea to . . . (1)
either proceed to trial or (2) enter into a fixed mandatory Rule
11(c)(1)(C) plea or (3) obtaining a sentence with a maximum of
10 years by entering into two consecutive wire fraud counts."[16]
(Second Pet. at 3-4.)  This claim is without merit.

After a criminal defendant has pled guilty, the
defendant, applying stringent standards, may be granted
withdrawal of his guilty plea before sentencing if "the
defendant can show a fair and just reason for requesting the
withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  "Although a
defendant can withdraw a plea for 'any fair and just reason,' it

---

[16] Mr. Messina asserts without any objective evidence that his counsel could
have sought and obtained a plea agreement to two counts of wire fraud and a
maximum sentence of 10 years.  (Second Pet. at 3-4.)  Moreover, a charge of
wire fraud carries a statutory maximum of 20 years and Mr. Messina was never
charged by the Government with wire fraud.  18 U.S.C. § 1343.

is basic that a defendant has no absolute right to withdraw his plea of guilty." *United States v. Wilson*, 828 F. Supp. 2d 679, 683 (S.D.N.Y. 2011) (quoting *United States v. Rosen*, 409 F.3d 535, 545 (2d Cir. 2005)).  The "standard for withdrawing a guilty plea is stringent because 'society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice.'" *United States v. Doe*, 537 F.3d 204, 211 (2d Cir. 2008) (quoting *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997)).

When considering whether a defendant's reason for withdrawal is "fair and just," courts "should consider, *inter alia*: (1) the amount of time that has elapsed between the plea and the motion; (2) whether the defendant has asserted a claim of legal innocence; and (3) whether the government would be prejudiced by a withdrawal of the plea." *Wilson*, 828 F. Supp. 2d at 683 (quoting *Doe*, 537 F.3d at 210); *see also United States v. Schmidt*, 373 F.3d 100, 102-03 (2d Cir. 2004).

In essence, Mr. Messina asserts that his counsel should have sought to withdraw his guilty plea because the court had denied the Government's recommendation of ten years and suggested that it would impose a higher sentence.  (Second Pet.

43

at 3-5,11.)  As Magistrate Judge Reyes informed Mr. Messina, who stated that he understood, the court's decision not to follow the Government's sentencing recommendation would not be a reasonable basis for Mr. Messina's withdrawal of his guilty plea.  (Plea Tr. at 20-21.)

Mr. Messina also suggests that counsel should have moved to withdraw his guilty plea because "the principal cooperating witness with respect to the Pistone robbery and shooting, Nicky Lanza murdered his wife and committed suicide." (Second Pet. at 8.)  Counsel could not have withdrawn Mr. Messina's plea on this basis because the "fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992) (citing *United States v. Figueroa*, 757 F.2d 466, 475 (2d Cir. 1985); *see also United States v. Rich*, 83 F. Supp. 3d 424, 430 (E.D.N.Y. 2015) (quoting *United States v. Hyde*, 520 U.S. 670, 676-77 (1997)) ("A change of heart does not suffice - a defendant may not 'withdraw his guilty plea simply on a lark' and must not be permitted to 'degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess.'").  Thus, counsel's representation did not fall "below

44

an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Further, Mr. Messina was not prejudiced by counsel's decision not to pursue a withdrawal of the guilty plea because the factors in considering granting a withdrawal weighed against Mr. Messina. The length of time between a defendant's plea and his request to withdraw the same is one factor that courts tend to consider. Mr. Messina pleaded guilty before Magistrate Judge Reyes on February 14, 2013, (Plea Tr. at 1), nine months before the court stated that it was not likely to accept the Government's recommendation of ten years on November 8, 2013. (November Sent. Transcript at 1.) The Second Circuit has repeatedly found that a delay of several months is grounds to deny a defendant's motion to withdraw his guilty plea. *See, e.g., United States v. Gil-Guerrero*, 759 F. App'x 12, 17 (2d Cir. 2018) (holding that district court did not abuse its discretion by denying a motion to withdraw a guilty plea because it was filed four months after the guilty plea); *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) (affirming denial of defendant's motion to withdraw guilty plea in part because defendant "waited over seven months to move formally to withdraw his guilty plea."); *Gonzalez*, 970 F.2d at 1100 (affirming denial of defendant's withdrawal of his guilty plea because the "assertion of his innocence is undercut by its timing, coming

45

nearly seven months after the plea"). The second factor also
would have weighed against Mr. Messina as he does not and cannot
assert a claim of legal innocence. (*See generally* Second Pet.;
*Wilson*, 828 F. Supp. 2d at 683.)

Finally, the prejudice factor would have weighed
against withdrawal. "'Prejudice' in the context of plea
withdrawal typically refers to depriving the Government of the
benefit of its bargain by having the burden of trial preparation
suddenly thrust upon it, as well as the potential difficulty to
the Government in securing evidence against the defendant that
would have been easier to secure at an earlier moment in time."
*United States v. Lopez*, 385 F.3d 245, 254 (2d Cir. 2004) (citing
*United States v. Lineback*, 330 F.3d 441, 445 (6th Cir. 2003)).
The "Government is not required to show prejudice when opposing
a defendant's motion to withdraw a guilty plea where the
defendant has shown no sufficient grounds for permitting
withdrawal; however, the presence or absence of such prejudice
may be considered by the district court in exercising its
discretion." *Gonzalez*, 970 F.2d at 1100.

The Government states that it would have been
"significantly prejudiced by withdrawal because withdrawal would
require the government to expend scarce resources preparing for
and presenting a trial regarding numerous crimes, including a
1989 attempted murder and a 1992 felony murder, which would

46

involve the testimony of numerous cooperating witnesses, retired law enforcement witnesses and civilian eyewitnesses, some of whom had already testified at the *Fatico* hearing." (Gov. Mem. at 17.) The court agrees and finds that the Government would have been sufficiently prejudiced by Mr. Messina's withdrawal of his plea. *See United States v. Kalichenko*, 2019 WL 3287976, at *5 (E.D.N.Y. July 22, 2019) ("[A]lthough the delay does not affect the overwhelming nature of the evidence . . . the Court concludes that requiring the government to now prepare for trial and present evidence in a case that was originally set for trial over three years ago would result in significant prejudice in terms of the burden on the government's resources."). Thus, each of the factors supports the court's finding that Mr. Messina has not shown that a motion for withdrawal would have been successful. Therefore, no prejudice resulted under *Strickland* and, consequently, this claim is respectfully denied.

> 4.   *Ineffective Assistance of Counsel Ground Three: Petitioner Was Not Fully Informed of the Terms of the Plea Agreement*

Mr. Messina states in his declaration that he "learned for the first time from the Court, at the first sentencing hearing of November 8, 2013, that the agreement as to a recommendation of 10 years could be rejected by the Court." (Messina Decl. ¶ 12.) Further, Mr. Messina alleges that he "would never have voluntarily exposed himself to a period of up

to 20 years incarceration." (Second Pet. at 4.)   Mr. Messina

is, in effect, stating that he would not have pleaded guilty and

that it was not made knowingly or voluntarily due to counsel's

ineffective assistance.   This claim is also respectfully

rejected.

In considering whether Mr. Messina would have been

able to withdraw his guilty plea because he did not understand

the plea agreement, the court "may also look to whether the

defendant has 'raised a significant question about the

voluntariness of the original plea.'"  *Schmidt*, 373 F.3d at 103

(quoting *Torres*, 129 F.3d at 715) (brackets omitted).  "Where .

. . a defendant's allegations in support of a motion to withdraw

a guilty plea after acceptance by the Court 'merely contradict

the record ... or are simply conclusory,' a district court may

deny a motion to withdraw a guilty plea without a hearing."

*United States v. Zakirov*, 305 F. Supp. 3d 438, 443 (E.D.N.Y.

2018) (quoting *Torres*, 129 F.3d at 715).

At the plea proceeding on February 14, 2013,

Magistrate Judge Reyes asked Mr. Messina if he understood that

"until your sentencing date, . . . you can't know with any

certainty what the guidelines are, whether they'll be grounds to

depart from them or whether Judge Matsumoto will impose a non-

guideline sentence," to which Mr. Messina responded under oath

that he understood.  (Plea Tr. at 18.)  Magistrate Judge Reyes

48

also asked Mr. Messina if he understood that the Government's recommendation of 120 months imprisonment was "not binding," and if the court "did not follow that recommendation or [] comes up with some different guideline analysis, that will not be the basis for you to withdraw your guilty plea," and Mr. Messina again affirmed that he understood.  (*Id.* at 20-21.)  Mr. Messina further affirmed that his plea was voluntary, that no one made any promises to him that caused him to plead guilty, and that no one promised what sentence he would receive from the court if he pled guilty.  (*Id.* at 22-23.)

Further, the plea agreement provides that "[t]he defendant understands that although imposition of a sentence in accordance with the United States Sentencing Guidelines (the 'Guideline' and 'U.S.S.G.') is not mandatory, the Guidelines are advisory and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case."  (Plea Agreement ¶ 2.)  Mr. Messina signed his name immediately below the following statement, affirming that "I have read the entire agreement and discussed it with my attorney.  I understand all of its terms and am entering into it knowingly and voluntarily."  (Plea Agreement at 9.)

The court is entitled to rely upon a "defendant's sworn statements, made in open court . . . that he understood

the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, . . . and had been made no promises except those contained in the plea agreement" to consider if his plea agreement was made knowingly or voluntarily. *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also Brooks v. United* States, 2017 WL 4122712, at *6 (S.D.N.Y. Aug. 30, 2017) (citing *Chen v. United States*, 2007 WL 4358466, at *3 (S.D.N.Y. Dec. 7, 2007)) (internal citations omitted) ("Because statements at a plea allocution carry a strong presumption of veracity, courts have dismissed ineffective assistance claims where, as here, petitioner's 'sworn statements directly contradict his more recent self-serving allegations.'")

Because the plea proceeding transcript and the plea agreement establish that his plea was knowing and voluntary, and contradict Mr. Messina's present assertions, petitioner's claim is respectfully denied.

5.  *Ineffective Assistance of Counsel Ground Four: Counsel Requested a* Fatico *Hearing without Consulting Petitioner*

Mr. Messina asserts that counsel was ineffective because "defense counsel, with no consultation with petitioner, simply went forward with a *Fatico* hearing," (Second Pet. at 4), and that he "certainly would not have elected to have a *Fatico*

50

hearing conducted upon those additional allegations [he] had previously denied by my not guilty plea." (Messina Decl. ¶ 26.)

Before sentencing a criminal defendant, "the Court must 'use the preponderance of the evidence standard to find facts relevant to sentencing for Guidelines calculation purposes.'" *Phillipe v. United States*, 2017 WL 3446820, at *6 (S.D.N.Y. Aug. 10, 2017) (quoting *United States v. Salazar*, 489 F.3d 555, 558 (2d Cir. 2007) (brackets omitted). Courts often provide an opportunity for a *Fatico* hearing to ensure "a convicted defendant the 'right to challenge the accuracy of the government's proffered facts regarding his participation in the sentencing-enhancing crime,' either through a 'full-blown evidentiary hearing' or otherwise." *Id.* (quoting *United States v. Lee*, 818 F.2d 1052, 1056 (2d Cir. 1987)). Though a convicted defendant does not have "an absolute right to demand [an evidentiary] hearing" in each instance where information in a PSR is challenged, the court must afford the defendant an adequate opportunity to rebut the government's allegations. *Lee*, 818 F.2d at 1056. A defendant may challenge statements within the PSR by presenting "countering affidavits, letters, or other written submissions [or by] the defendant and/or counsel . . . directing argument and comment to the court," in lieu of an evidentiary hearing. *Id.*

Here, only after the court indicated that it did not find a basis for a significant downward departure as indicated in the plea agreement, and was wary of potential sentencing disparities, did defense counsel request a *Fatico* hearing, which as scheduled for a future date.  (November Sent. Tr. at 11.) Defense counsel's decision provided Mr. Messina the opportunity to mount challenges to the Government's proffered factual findings, as set forth in the PSR, rather than allow for the court to consider these facts under the "preponderance of the evidence standard" without objection from defense counsel.

Notably, Mr. Messina makes no assertion in his declaration that he, at any point, communicated to counsel that he did not want to proceed with a *Fatico* hearing, that counsel proceeded against his wishes, or that he did not participate in the preparation for the *Fatico* hearing.  (*See generally* Messina Decl.)  To the contrary, Mr. McMahon has affirmed under oath that, prior to the *Fatico* hearing, Mr. Messina provided him with extensive information about the Government's witnesses, Michael Bitz and Albert Guido, as well defense witness William Caroleo, who was called to testify at the *Fatico* hearing by Mr. McMahon. (McMahon Aff. ¶ 16.)  Mr. McMahon states that Mr. Messina never expressed a preference to not proceed with the *Fatico* hearing or dissatisfaction with the cross-examination of Mr. Bitz and Mr. Guido.  (*Id.*)  At any time from the invocation of Mr. Messina's

right to a *Fatico* hearing on November 8, 2013, until the *Fatico*
hearing was ultimately held three months later, in February
2014, Mr. Messina could have withdrawn his request for a *Fatico*
hearing, but he did not.   (November Sent. Tr. at 11; *Fatico
Hearing* Tr. at 1).

Moreover, the Second Circuit has stated that "counsel
may properly decide to forego a *Fatico* hearing as a 'matter of
strategy,'" which the court presumes is sound absent a "strong
showing" to the contrary.   *United States v. Santiago*, 330 F.
App'x 234, 238-39 (2d Cir. 2009) (internal citation omitted).
Courts within this circuit have repeatedly found that counsel's
decision whether or not to request a *Fatico* hearing is a
"strategic [choice] that falls within the range of reasonable
professional assistance."   *United States v. Peterson*, 896 F.
Supp. 2d 305, 318 (S.D.N.Y. 2012); *see generally Ramos-Nunez v.
United States*, 16-CV-4727 (VSB), 2019 WL 1300811, at *11
(S.D.N.Y. Mar. 21, 2019) (finding that because counsel's
decision not to request a *Fatico* hearing likely would not have
changed the sentencing outcome, petitioner had failed to
establish prejudice under *Strickland*); *Phillipe*, 2017 WL
3446820, at *6 (counsel's decision to request a hearing
constitutes a strategic choice "that this Court will not second-
guess at the § 2255 stage"); *Schwamborn v. United States*, 492
F.Supp.2d 155, 163 (E.D.N.Y. 2007) (collecting cases) ("Some

53

authority exists for the proposition that the decision whether
to request a *Fatico* hearing to challenge allegations of fact
upon which the district court may rely to the defendant's
detriment at sentencing is a matter committed to the discretion
of the defense attorney, which cannot give rise to
an ineffective assistance claim.").

Because Mr. Messina has not made a showing that
counsel's request for a *Fatico* hearing in this case was
unreasonable, ineffective or resulted in prejudice by changing
the sentencing outcome, the court does not second-guess
counsel's strategic choice.  Accordingly, petitioner's claim is
respectfully denied.

6.   *Ineffective Assistance of Counsel Ground Five:*
     *Failing to Require that the Government Honor the*
     *Plea Agreement*

Mr. Messina asserts that "counsel never requested the
government set forth the host of legitimate reasons (including,
but not limited to, the fact that the criminal conduct was over
25 years prior when during a period when petitioner was addicted
to drugs, and petitioner had completely 'changed his life' and
that the victim's family needed 'closure') for recommending 10
years."  (Second Pet. at 5.)

As discussed immediately below regarding the
Government's alleged misconduct, Mr. Messina's purportedly
"legitimate" reasons are not found in the record, and he has not

proffered any evidence that the Government breached the plea agreement.  Because Mr. Messina fails to establish that the Government breached the plea agreement, he "necessarily fails to demonstrate that Counsel's performance 'fell below an objective standard of reasonableness.'" *Prelaj v. United States*, 2020 WL 3884443, at *6 (S.D.N.Y. July 9, 2020) (quoting *Strickland*, 466 U.S. at 688).  For the same reason, Mr. Messina also cannot demonstrate prejudice because "there is no 'reasonable probability' that the outcome of sentence would have been different but for Counsel's performance." *Id*. (quoting *Strickland*, 466 U.S. at 694).  Thus, this claim is respectfully denied.

C. Ground Three: Government Breach of Plea Agreement

Mr. Messina asserts that the Government violated the plea agreement by failing to support its recommendation for a ten-year sentence, beyond stating that petitioner had pled guilty. (Second Pet. 18-19.)  This claim lacks merit.

In determining whether a plea agreement has been breached, courts should "look to the reasonable understanding of the parties as to the terms of the agreement." *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002) (citing *United States v. Colon*, 220 F.3d 48, 51 (2d Cir. 2000)) (brackets omitted).  The Second Circuit has stated that plea agreements are "unique contracts in which special due process concerns for fairness and

the adequacy of procedural safeguards obtain." *United States v. Padilla*, 186 F.3d 136, 140 (2d Cir. 1999) (internal quotation and citation omitted).

"To determine whether a plea agreement has been breached, a court must look to what the parties reasonably understood to be the terms of the agreement." *United States v. Miller*, 993 F.2d 16, 20 (2d Cir. 1992). Courts must construe plea agreements strictly against the government and not "hesitate to scrutinize the government's conduct to ensure that it comports with the highest standard of fairness." *United States v. Lawlor*, 168 F.3d 633, 637 (2d Cir. 1999). "[S]tatements by the government asserting that it did not intend to violate the plea agreement do not insulate the government against a finding of breach if in fact what was said constituted an argument that violated the plea agreement." *United States v. Taylor*, 961 F.3d 68, 82 (2d Cir. 2020) (quoting *United States v. Griffin*, 510 F.3d 354, 361 (2d Cir. 2007)).

The Second Circuit has stated that "because the government ordinarily has certain awesome advantages in bargaining power, any ambiguities in the agreement must be resolved in favor of the defendant." *United States v. Palladino*, 347 F.3d 29, 33 (2d Cir. 2003) (quoting *Riera*, 298 F.3d at 133) (brackets omitted). "The remedy for the breach of a plea agreement is either rescision – withdrawal of the plea –

or specific performance through resentencing, determined at the court's discretion." *Prelaj*, 2020 WL 3884443, at *5 (S.D.N.Y. July 9, 2020) (citing *Puckett v. United States*, 556 U.S. 129, 137 (2009). If there is a violation of the plea agreement, the court must consider if the violation was so minor that the defendant did not suffer a "meaningful detriment" because his reasonable expectations have been fulfilled and, therefore, no remedy is warranted because of the *de minimis* breach exception. *United States v. Vaval*, 404 F.3d 144, 155 (2d Cir. 2005 (citing *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir. 1982)).

The instant plea agreement stipulates that the Government would bring no further criminal charges against Mr. Messina with respect to the criminal conduct charged in the superseding indictment and "make no motion for an upward departure under the Sentencing Guidelines." (Plea Agreement at 6-7.) The plea agreement also states that the Government "will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence." (*Id.* ¶ 2.)

Mr. Messina asserts that after the initial sentencing proceeding on November 8, 2013, "the Government immediately abandoned its responsibilities under the plea agreement that it had drafted" and that the "Government stood silent never

referencing, among other reasons, the 20 year[] passage of time, the petitioner's extraordinary efforts to rehabilitate himself, or the need for the victims to get closure." (Second Pet. at 3, 18-19.) Prior to the initial sentencing hearing in November 2013, the Government's sentencing letter stated that "the recommended sentence [of 120 months] appropriately balances the defendant's criminal history and the seriousness of the defendant's conduct against the significant prosecutorial risks and burdens avoided through the negotiated resolution . . . ." (ECF No. 265, Government's Letter Regarding Sentencing dated November 7, 2013, at 1.) Mr. Messina focuses his attack on the Government's failure to provide further justification after the court stated that the Government did not provide a sufficient basis for its ten-year recommended sentence. (Second Pet. at 18-19.)

Under the plea agreement, the Government had no obligation to include Mr. Messina's arguments in its sentencing letter or to otherwise advocate on Mr. Messina's behalf. Further, the Government contends, and the court agrees, that Mr. Messina's statements are not accurate. (Opp. Br. at 25.) Mr. Messina continued his criminal conduct until his arrest in 2011, undermining his statements that the Government should have referenced the 20 years since the robbery of Mr. Pistone and argued that Mr. Messina was making extraordinary efforts to

rehabilitate himself.   Further, Mr. Messina does not provide a
basis for the Government to have spoken on behalf of the Pistone
family or the other victims as to what specific sentence would
provide closure for the loss of, or injuries to their loved
ones.

          Although it is unclear if Mr. Messina's second *pro se*
petition takes issue with to the Government's affirmative
statements at sentencing on April 4, 2014, the court evaluates
whether the Government's statements in its sentencing
submissions and during the sentencing proceeding constituted
advocacy in favor of an upward departure.   *Palladino*, 347 F.3d
at 34 (holding that the government had breached the plea
agreement by advocating a six-level sentencing enhancement based
on facts known to it at the time it entered the agreement).

          After Mr. Messina's counsel addressed the court at
sentencing, AUSA Allon Lifshitz, on behalf of the Government,
responded that:

> First of all . . . the defendant is arguing for a particular
> sentence, in part, based on his conduct while on pretrial
> release.  I think good conduct on pretrial release should
> be expected and should get little weight when deciding
> whether it should benefit the defendant. He knows he's
> being scrutinized; he's certainly a bright man and a self-
> interested man, and the absence of crimes while on pretrial
> release shouldn't help him very much. Secondly . . . . it
> was stated several times that Mr. Messina didn't intend or
> agree to murder Mr. Pistone, but only to rob the house.  I
> think someone who conspires to commit an armed robbery is
> culpable, clearly is culpable legally, but I think is also

59

culpable morally when someone you made an agreement with decides to pull the trigger and ends a person's life.  And the third point I want to make is just in response to the argument made by both counsel and defendant that he's a changed man.  As we've seen in this case, the defendant was committing crimes as late as 2009 and 2010.  He was arrested in this case in 2011; so effectively, until the time he was arrested, he was involved in gambling, he was involved in loansharking, he was involved in the possession of dangerous, deadly weapons, multiple firearms and also, extorsions [sic] that the defendant himself referred to as dirty work on a recording.  So it's true that the most serious crimes we believe were proven are in the past, there is [sic] numerous crimes, it was a full-time occupation until the time of arrest.  So having said all that, we stand by everything we've written previously, including the plea agreement and we have nothing further to say at this time.

(April Sent. Tr. 22-24.)  The court finds that the Government's statements were not legally or factually incorrect or unfair, and did not constitute a breach of the plea agreement.  (*Id*. at 23.)

In *Vaval*, the Government entered into a plea agreement which "prohibited it from seeking an upward departure or taking a position on the appropriate sentence within the applicable Guidelines range."  404 F.3d at 153.  At sentencing, the Government "volunteered highly negative characterizations of the appellant's criminal history as 'appalling' and his purported contrition as 'disingenuous.'"  *Id*.

In the present case, unlike in *Vaval*, the plea agreement did not prohibit the Government from "taking a

position on the appropriate sentence within the applicable
Guidelines range," but rather only bound the Government to not
seek an upward departure.  (Plea Agreement at 7.)  Further, the
court agrees with the Government that the integration clause
within the plea agreement defines the parties' agreement as only
"[what is] set forth in this agreement and none will be entered
into unless memorialized in writing and signed by the parties."[17]
(Plea Agreement ¶ 7.)  The plea agreement specified that the
Government would not bring further criminal charges on the
criminal conduct outlined in the superseding indictment and not
move for an upward departure.

Though AUSA Lifshitz's statement described Mr. Messina
in a manner less favorable than he might have preferred, it was
in direct response to Mr. McMahon's characterization of Mr.
Messina as "not the same person that was running around with
those people back in 1992 conspiring to rob the Pistone family."
(April Sent. Tr. at 17.)  Mitigating the effect of any damaging
statements, AUSA Lifshitz acknowledged that Mr. Messina' most
"serious crimes . . . are in the past."  (*Id.*)  In addition,
AUSA Lifshitz unequivocally stated that the Government "stand[s]

---

[17] "Apart from any written proffer agreements, if applicable, no promises,
agreements or conditions have been entered into by the parties other than
those set forth in this agreement and none will be entered into unless
memorialized in writing and signed by all parties. Apart from any written
proffer agreements, if applicable, this agreement supersedes all prior
promises, agreements or conditions between the parties."  (Plea Agreement ¶
7.)

by our [plea] agreement" and made no motion for an upward
departure.  (April Sent. Tr. at 24.)

Because the plea agreement does not require that the
Government refrain from responding to defendant's
representations at sentencing, the Government's statements at
petitioner's sentencing did not constitute a breach of the plea
agreement.  *See Vaval*, 404 F.3d at 155 (quoting *United States v.
Casamento*, 887 F.2d 1141, 1182 (2d Cir. 1989)) ("We deemed a
remedy to be unnecessary, however, because the memorandum
included only brief statements that 'could properly have been
presented to the district court as rebuttal to [defendant's]
arguments.'"); *Riera*, 298 F.3d at 134-36 (finding Government was
not in breach in part because "the government later repeatedly
emphasized that it was not advocating an upward departure.").
Under the circumstances, the Government reasonably met the
expectations of the plea agreement, and the court finds that
habeas relief is not warranted.  Thus, petitioner's claim is
respectfully denied.

D. <u>Ground Four: Ineffective Assistance of Counsel at
Sentencing</u>

Mr. Messina asserts that counsel rendered ineffective
assistance in failing to raise with the court "[a]cceptance of
Responsibility as a ground for departure and/or variance in the
post *Booker* era pursuant to 18 U.S.C. § 3553(a)(6) when U.S.S.G.

§ 5G1.1(a) nullified the § 3E1.1 Adjustment" during sentencing. (Third Pet. at 2.)

As previously noted, "where it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice [than on the ground of objectively unreasonable performance]," the court need only consider the prejudice prong *Parker*, 666 F.3d at 834 (quoting *Strickland*, 466 U.S. at 697) (internal quotation marks omitted).  The court thus considers whether Mr. Messina has shown "there was a reasonable probability, that but for his counsel's errors, the result of the proceeding would have been different" and the court would have provided a further sentence reduction for his acceptance of responsibility.  *Strickland*, 466 U.S. at 694.

In support of his claim, Mr. Messina cites to several pre-*Booker* cases, including *United States v. Rodriguez*, 64 F.3d 638 (11th Cir. 1995).  He asserts that counsel should have informed the court that it had the discretion to reward a defendant's acceptance of responsibility "when Section 5G1.1(a) renders Section 3E1.1 ineffectual in reducing defendant's actual sentence."  (Third Pet. at 6-7.)

Mr. Messina's claim fails to show prejudice.  Mr. Messina asserts that, if counsel had advocated that the court downwardly depart based on petitioner's acceptance of responsibility, Mr. Messina would have been given a sentencing

63

benefit.  (Third Pet. at 6.)   The Second Circuit's "precedent requires some objective evidence other than defendant's assertions to establish prejudice."  *Pham*, 317 F.3d at 182 (citing *Gordon*, 156 F.3d at 380-81.); *see also Crisci v. United States*, 108 F. App'x 25, 27 (2d Cir. 2004) (finding that prejudice "require[s] some objective evidence other than defendant's self-serving assertions . . . .").  Mr. Messina does not provide objective evidence, but asserts, in conclusory fashion, that "a failure to consider the mandate of 18 U.S.C. § 3553(a)(6) to avoid unwarranted sentencing disparity would be abrogated were the court not to consider, as the court did not, the denial of any benefit to Messina for [a]cceptance of responsibility."  (Third Pet. at 6-7.)

As the record reflects, the court applied a reduction for acceptance of responsibility and provided a downward departure of two years from the statutory maximum.  (April Sent. Tr. at 56.)  Moreover, Mr. Messina's guideline range was between 360 months to life, absent the statutory maximum of 240 months. Mr. Messina does not cite to any case that a further reduction was warranted or required.  (*See generally* Third Pet.)  Rather, post-*Booker*, the Supreme Court has made clear that the Guidelines are advisory and that district courts have discretion to determine defendants' sentences.  *Booker*, 543 U.S. at 223-25; *see also Kimbrough v. United States*, 552 U.S. 85, 89 (2007).

Because Mr. Messina has failed to show that there was "reasonable probability" that his counsel's allegedly deficient performance prejudiced his defense, the court respectfully denies Mr. Messina's claim.

### E. Ground Five: Denial of Right to Participate in Defense

Mr. Messina asserts that his counsel's request for a *Fatico* hearing without consulting him was an improper surrender of his autonomy to decide the objective of his defense under *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018). (Third Pet. at 7.) Petitioner's argument again lacks merit.

In *McCoy*, the Supreme Court stated that when a "client's autonomy, not counsel's competence, is in issue," the *Strickland* test does not apply. 138 S. Ct. at 1510. The "[v]iolation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural'; when present, such an error is not subject to harmless-error review." *McCoy*, 138 S. Ct. at 1511. "[A]n error has been deemed structural if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," such as "the fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1908 (2017) (citing *Faretta v. California*, 422 U.S. 806, 834 (1975)).

In *McCoy*, the Supreme Court held that attorneys may make "strategic choices about how best to achieve a client's objectives," but the client reserves the "autonomy to decide that the objective of the defense is to assert innocence." 138 S. Ct. at 1508. *McCoy* involved a defendant, on trial for murder, whose counsel, against defendant's protestations of his innocence, made a strategic decision to concede to the jury that the defendant had committed three murders in order to avoid the death penalty. *Id.* at 1506-07. As the Supreme Court noted, "[j]ust as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal counsel despite the defendant's own inexperience. . . , so may she insist on maintaining her innocence at the guilt phase of a capital trial. These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." *McCoy*, 136 S. Ct. at 1508 (citation omitted).

If the court were to accept Mr. Messina's interpretation of *McCoy*, the court would effectively expand the scope of *McCoy* beyond a defendant's autonomy over the objective of his defense, to the attorney's authority over the strategic decisions to reach the client's objective. *See McCoy*, 138 S. Ct. at 1509 (citing *Gonzalez*, 553 U.S. at 249) ("Preserving for the defendant the ability to decide whether to maintain his

innocence should not displace counsel's, or the court's, respective trial management roles."); see also *United States v. Rosemond*, 958 F.3d 111, 122-23 (2d Cir. 2020) ("[W]hen a lawyer makes strategic concessions in pursuit of an acquittal, there is no *McCoy* violation assuming, of course, the defendant's objective was to maintain his non-guilt[.]"); *Yannai*, 346 F.Supp.3d 336, 344 (E.D.N.Y. 2018) ("[T]he question of *how* to present an argument of innocence is not [within the client's control], and *McCoy* cannot be read so broadly."). The court respectfully declines to so expand the Supreme Court's holding in *McCoy* for the reasons set forth below.

First, Mr. Messina does not assert a proper claim pursuant to *McCoy* here. Petitioner rests on the conclusory assertion that counsel's request of a *Fatico* hearing without consulting with petitioner was "not [a] strategic choice[] about how best to achieve [petitioner's] objectives [but rather a] choice[] about what the client's objectives in fact are." (Third Pet. at 10.) But Mr. Messina has neither alleged that he was overruled in the "objective of his defense," nor that he was denied the right to make a *fundamental* decision regarding his case, such as the right to testify in his defense, right to plead guilty or maintain his innocence, or right to appeal. *See Yannai v. United States*, 346 F.Supp.3d 336, 344 (E.D.N.Y. 2018); *see also Jones v. Barnes*, 103 S. Ct. 3308, 3312 (1983).

Second, Mr. Messina's counsel, Mr. Nelson, erroneously relies on *Jones*, which does not stand for the proposition that defendants have the sole authority to forgo an evidentiary hearing – *Jones* made no reference at all to a defendant's authority over such hearings.  (Third Pet. at 9-10; *Jones*, 103 S. Ct. at 3312.)  Moreover, as discussed above, Mr. Messina does not assert that he directed that Mr. McMahon withdraw the request for a *Fatico* hearing.  Petitioner also tries unsuccessfully to distinguish *Gonzalez v. United States*, 553 U.S. 242 (2008), (Third Pet. at 9-10), in which the Supreme Court stated that "decisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence[.]"  553 U.S. at 248 (internal citations omitted).  Though petitioner asserts that counsel did not consult him before exercising his right to a *Fatico* hearing during a sentencing proceeding, notably, he has cited to no relevant authority that states that the decision of whether to exercise defendant's right to a *Fatico* hearing is the sort of fundamental decision, as to a defendant's objective, that is reserved to the defendant.  (Third Pet. at 7-8.)

Third, as addressed above, counsel's decision to request a *Fatico* hearing is a strategic decision that the court presumes to be sound, absent a strong showing to the contrary.

68

Because Mr. Messina has not made a strong showing that counsel's
request for a *Fatico* hearing in this case was ineffective or
changed the sentencing outcome, the court does not second-guess
counsel's strategic choice.  Even if Mr. Messina had proffered a
reason why counsel's choice was ill-advised, the record supports
a finding that Mr. Messina's counsel made a sound decision in
requesting a *Fatico* hearing.

       Fourth, even if counsel's request for a *Fatico* hearing
constituted a structural error subject to *McCoy*, petitioner has
not shown prejudice.  Mr. Messina states that a showing of "a
violation of Messina's protected autonomy right was complete
when the court allowed counsel to usurp control of an issue
within Messina's sole prerogative." (Third Pet. at 11.)  When a
structural error is "raised as part of an ineffective assistance
claim on collateral review, 'prejudice is not shown
automatically.'" *Yannai*, 346 F.Supp.3d at 346-47 (quoting
*Weaver*, 137 S. Ct. at 1910-13).  On collateral review, the
"finality interest is more at risk" because "more time will have
elapsed" than on direct review and "therefore a higher standard
applies." *Id*. at 347 (quoting *Weaver*, 137 S. Ct. at 1912); *see
also Mayes v. United States*, 2018 WL 455819, at *9 (E.D.N.Y.
Sept. 21, 2018) (quoting *Rosario v. Bennett*, 2002 WL 31852827,
at *30 (S.D.N.Y. Dec. 20, 2002)) ("even where no consultation
occurs, the petitioner has 'the burden of proving that the

69

alleged lack of communication with counsel prejudiced his defense.'"). As discussed above, Mr. Messina is unable to show that he was prejudiced by the decision to proceed with a *Fatico* hearing.

Because the court finds that Mr. Messina's counsel did not violate the "fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty," the court respectfully denies petitioner's claim. *Weaver*, 137 S. Ct. at 1908.

## Conclusion

For the reasons stated above, Mr. Messina's Section 2255 petitions are respectfully DENIED and DISMISSED in their entirety. Mr. Messina has not shown a denial of a constitutional right and, therefore, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (discussing certificate of appealability standard); Rules Governing Section 2254 and 2255 Cases, Rule 11 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

The Clerk of Court is respectfully directed to enter judgment in favor of respondent and close these cases: 11-CR-31 (KAM)(1), 16-CV-3724 (KAM), and 16-CV-6774 (KAM).

**SO ORDERED.**

Dated:    July 21, 2020

                              _____/s/_____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge