UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,

                               **MEMORANDUM & ORDER**

    - against -                11-CR-31 (KAM)

NEIL MESSINA,

             Defendant.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

Neil Messina is serving an 18-year prison sentence imposed following his guilty plea to a charge of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  (ECF No. 311, Amended Judgment filed May 22, 2014 ("Judgment").)  Mr. Messina now moves for a second time for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  (ECF No. 371, Mot. for Reduction of Sentence ("Mot.").)  For the reasons stated below, the Court respectfully denies Mr. Messina's motion.

<u>**BACKGROUND**</u>

Mr. Messina previously filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, which the Court denied and dismissed in its entirety.  *See Messina v. United States*, No. 11-CR-31 (KAM), 2020 WL 4194533, at *1 (E.D.N.Y. July 21, 2020).  The Court incorporates the factual background portion of the opinion denying Mr. Messina's petition for a writ of habeas corpus by reference given its more fulsome discussion

of the nature of his offenses.

**I.   Factual Background**

On January 12, 2011, a grand jury in the Eastern District of New York returned an indictment charging Mr. Messina and three other defendants.  (ECF No. 1, Indictment filed January 12, 2011, at 1.)  On August 16, 2012, the grand jury returned a superseding fifteen-count indictment against Mr. Messina.  (*See generally* ECF No. 190, Superseding Indictment (S-1) filed August 16, 2012.)

**Count One** charged Mr. Messina with conspiracy to conduct racketeering activity in violation of 18 U.S.C. § 1962(c) between February 1989 and January 2011 within the Eastern District of New York. (*Id.* at 6-7.)  Count One also charged Mr. Messina with nine separate Racketeering Acts, although the Court will only summarize those to which he stipulated in his guilty plea. (*See generally id.*) **Racketeering Act Two(A)** charged Mr. Messina with the conspiracy to rob Joseph Pistone, while armed with a deadly weapon, and in violation of New York Penal Law §§ 160.15(2) and 105.10, on or about August 17, 1992. (*Id.* at 8-9.). **Racketeering Act Three** charged Mr. Messina with Illegal Gambling – Sports Betting, including the illegal transmission of wagering information and use of interstate facilities in-aid of racketeering between 2008 and May 2009 in violation of New York Penal Law § 225.05 and 18 U.S.C. §§ 1084(a) and 2, 1952(a)(2)(A)

2

and 2. (*Id.* at 9-10.) **Racketeering Act Five** charged Mr. Messina with Extortionate Extension of Credit to John Doe #1, in violation of 18 U.S.C. §§ 892(a) and 2. (*Id.* at 10-11.)  Mr. Messina was also charged with fourteen other counts in the superseding indictment, relating to extortionate collection of credit, other racketeering offenses, and firearms offenses. *Messina*, 2020 WL 4194533, at *2.

On February 14, 2013, Mr. Messina pleaded guilty before then-Magistrate Judge Ramon Reyes, Jr. to Count One of the Superseding Indictment (S-1) charging racketeering conspiracy, in violation of 18 U.S.C. Section 1962(d).  (ECF No. 218, Transcript of February 14, 2013, Plea Proceeding ("Plea Tr."), at 8-9.)  As part of the plea hearing, Mr. Messina allocuted to Racketeering Acts 2(A), 3, and 5, respectively the conspiracy to rob Joseph Pistone--that defendant admitted led to Mr. Pistone's death--operation of an illegal gambling business between 2008 and May 2009, and an extortionate extension of credit to John Doe #1.  (*Id.* at 23-25.)

On November 8, 2013, Mr. Messina appeared before this court for sentencing.  (ECF No. 317, November 8, 2013, Sentencing Transcript ("November Sent. Tr."), at 1.)  During the November 8, 2013, proceeding, Mr. Messina's counsel exercised his client's right to schedule a *Fatico* fact-finding hearing.  (*Id.* at 11.)  Following the *Fatico* hearing and submission of post-

3

*Fatico* briefing, the Court made findings on the record during Mr. Messina's April 4, 2014, sentencing that the Government had established by a preponderance of the evidence at the *Fatico* hearing that: Mr. Messina was responsible for the solicitation, conspiracy and attempt to murder Michele Maniscalco, Mr. Messina possessed firearms in the furtherance of the charged racketeering conspiracy, and that he engaged in loansharking. (ECF No. 344-1, April 4, 2014, Sentencing Transcript ("April Sent. Tr."), at 25-29.)  The court ultimately imposed a sentence of 18 years (216 months) of incarceration, a three-year supervised release term, and restitution of $120,611.30 for conspiracy to commit racketeering (Count One) on May 22, 2014. (*Id.* at 56-57; Judgment at 1-5.)

## II.  Procedural Background

Mr. Messina subsequently appealed his sentence, and the Second Circuit issued a mandate affirming the sentence after briefing and oral arguments. *United States v. Messina*, 806 F.3d 55 (2d Cir. 2015).  As previously mentioned, Mr. Messina also submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, alleging, among other things, ineffective assistance of counsel. *Messina*, 2020 WL 4194533, at *7.  Mr. Messina's petition was denied in its entirety by this Court on July 21, 2020.  *Id.* at *25.  Mr. Messina appealed the denial of his petition, and on January 26, 2021, the Second Circuit

4

dismissed his appeal and denied his motion for a certificate of
appealability and for appointment of counsel.  (ECF No. 370,
Mandate dated April 6, 2021.)

On April 27, 2020, Mr. Messina filed his first motion for
compassionate release.  (ECF No. 341.)  The Government opposed
the motion, (ECF No. 344), and the Court denied Mr. Messina's
request in a docket order dated May 11, 2020, concluding that
his case did not present "extraordinary and compelling reasons"
for his release and that the factors under 18 U.S.C. § 3553(a)
weighed in favor of continued custody, (*see* Docket Order dated
May 11, 2020).  Mr. Messina subsequently moved for
reconsideration, emphasizing two new facts for the Court's
consideration: (1) that Mr. Messina had contracted COVID-19; and
(2) an increase in the number of COVID-19 cases in Mr. Messina's
correctional facility.  (ECF Nos. 362, 364, 367, and 368.)
While noting the hardships presented by the COVID-19 pandemic,
the Court nonetheless denied Mr. Messina's motion for
reconsideration.  (Docket Order dated March 23, 2021.)

Mr. Messina is currently incarcerated at FCI Allenwood
Low, the Low-Security Facility within the Allenwood Federal
Correctional Complex, and is due to be released on June 18,
2017[1].  *See* https://www.bop.gov/inmateloc (last visited May 31,

---

[1] Mr. Messina's counsel states that Mr. Messina "is eligible for release on
February 16, 2026" based on Earned Time Credits and good time credits accrued
as of December 8, 2023, and estimates that "Mr. Messina will be eligible for

2024).  On December 8, 2023, Mr. Messina's counsel filed the instant motion for compassionate release, arguing that extraordinary and compelling reasons warrant a 30-month reduction in Mr. Messina's sentence, and that the Section 3553(a) factors do not prevent a sentence reduction.  (*See generally* Mot.)  After being granted an extension, the Government opposed Mr. Messina's motion on February 5, 2024.  (ECF No. 375, Government's Letter in Opposition ("Gov't Opp.").)  Mr. Messina's counsel submitted both a reply submission on March 5, 2024, as well as a supplemental letter in further support.  (ECF Nos. 377, Defendant's Reply in Further Support ("Reply"), ECF No. 378.)  The Court requested the Government to respond to Mr. Messina's supplemental letter in further support, and on March 29, 2024, the Government submitted a letter in opposition to Mr. Messina's supplemental response.  (ECF No. 380.)  On May 13, 2024, the Court requested the Government to provide an update regarding Mr. Messina's progress in paying his restitution obligations, and the Government submitted a letter response on May 31, 2024.  (ECF No. 381.)

## LEGAL STANDARD

The federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), creates an exception to the general rule that a

---

release to a halfway house between May and August 2025."  (Mot. at 1.)

federal district court may not modify a term of imprisonment
after it has been imposed.  To be eligible for compassionate
release, the defendant must (1) exhaust his or her
administrative remedies by requesting compassionate release from
the prison authorities, (2) show "extraordinary and compelling
reasons" for a sentence reduction, and (3) show that the
reduction accords with the sentencing factors set forth in
18 U.S.C. § 3553(a).  *United States v. Keitt*, 21 F.4th 67, 71
(2d Cir. 2021).  "Application of the § 3553(a) factors requires
an assessment of whether the relevant factors outweigh the
'extraordinary and compelling reasons' warranting compassionate
release and whether compassionate release would undermine the
goals of the original sentence."  *United States v. Daugerdas*,
613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020) (internal quotation
marks and citation omitted).

Prior to November 1, 2023, "despite the material changes
Congress made to compassionate release procedures in the First
Step Act, the Sentencing Commission ha[d] not [yet] updated its
policy statement on compassionate release."  *United States v.
Brooker*, 976 F.3d 228, 233-34 (2d Cir. 2020); *see also* U.S.
Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed.
Reg. 28254 (effective Nov. 1, 2023).  Consequently, courts
considering compassionate release motions were free "to consider
the full slate of extraordinary and compelling reasons that an

7

imprisoned person might bring before them in motions for compassionate release" without being limited by the then-outdated Guidelines. *Brooker*, 976 F.3d at 237. "Effective November 1, 2023, [however,] the Commission has amended the Guidelines to also cover defendant-initiated petitions" in addition to BOP-initiated motions. *United States v. Saez*, No. 16-CR-317 (PAE), 2024 WL 303847, at *3 (S.D.N.Y. Jan. 26, 2024) (citation omitted). Accordingly, "[t]he Commission's amended guidance as to what constitutes extraordinary and compelling reasons now controls a court's analysis of a defendant- or BOP-initiated petition for compassionate release." *Id.*

Relevant to the instant motion, the updated guidance from the Sentencing Commission lists "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" as among the "extraordinary and compelling reasons" justifying a sentence reduction. U.S. Sent'g Guidelines Manual (U.S. Sent'g Comm'n 2023) ("U.S.S.G.") 1B1.13(b)(3)(C). The updated guidance also includes a "catch-all" provision, allowing a Court to consider "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [of the updated guidance], are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. 1B1.13(b)(5).

8

## DISCUSSION

Mr. Messina seeks compassionate release due to his father's "chronic [health] conditions that render him homebound," arguing that "Mr. Messina is the only remaining option to give his father the care that he needs." (*See* Mot. 5–8.) In making this argument, Mr. Messina relies on the above-mentioned policy statement in the Sentencing Guidelines providing that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" can be an extraordinary and compelling reason that justifies compassionate release. *See* U.S.S.G. § 1B1.13(b)(3)(C). Mr. Messina also argues for release under the "catch-all" provision provided by the Sentencing Commission, *id.* § 1B1.13(b)(5), stating that Mr. Messina's father's dementia and advanced age, Mr. Messina's prior abuse by a correctional officer, Mr. Messina's own health conditions, and Mr. Messina's "exceptional rehabilitation" support a sentence reduction, (Mot. at 8–19). Mr. Messina argues that these same factors weigh in favor of a shortened sentence under 18 U.S.C. § 3553(a). (Mot. at 19.) Mr. Messina also offers "additional information" in support of the motion in his supplemental letter dated March 5, 2024, which the Court discusses *infra*. (ECF No. 378.)

## I.   Exhaustion

A defendant may move for compassionate release after the

earlier of (1) exhausting all administrative rights to appeal a
failure by the Bureau of Prisons to file a motion on the
defendant's behalf or (2) the lapse of thirty days from the
receipt of any such request by the warden.  18 U.S.C.
§ 3582(c)(1)(A).  This exhaustion requirement is a case
processing rule, not a jurisdictional limitation.  *United States
v. Saladino*, 7 F.4th 120, 121 (2d Cir. 2021).

Mr. Messina's counsel states that Mr. Messina "applied to
the warden at FCI Allenwood for a sentence reduction[, ] [t]he
warden denied the application, and Mr. Messina has appealed that
denial to the highest level administratively."  (Mot. at 2.)
The Government does not dispute this assertion, stating that Mr.
Messina submitted his request for compassionate release to the
Warden on September 13, 2022, and that the request was denied on
September 22, 2022.  (Gov't Opp. at 4.)  The Government further
noted that "a staff attorney with the Bureau of Prisons ("BOP")
has confirmed that [Mr. Messina] administratively appealed the
Warden's decision with the BOP."  (*Id.*)  Because it is clear
that Mr. Messina satisfied the exhaustion requirements, the
Court may proceed to review the merits of his motion.

## II.  Extraordinary and Compelling Reasons

### A.   Family Circumstances

Mr. Messina explains that his father, who is ninety-five
years of age as of the date of this opinion "has numerous

chronic conditions that render him homebound." (Mot. at 5.)
Mr. Messina has included as an exhibit to his motion notes from
an October 20, 2023, doctor's visit with his father listing a
variety of medical problems and stating that Mr. Messina's
father "is at risk for falls." (ECF No. 371-9, Exhibit I to
Defendant's Motion, at 3.) Other medical notes relating to Mr.
Messina's father are attached as a separate exhibit, along with
a declaration from Mr. Messina's sister regarding the family's
concerns over her father's health. (*See* ECF No. 371-8, Exhibit
H to Defendant's Motion; ECF No. 371-10, Exhibit J to
Defendant's Motion ("Ex. J").) According to the declaration of
Mr. Messina's sister, their father "lives alone at Chelsea
Senior Living, an assisted living facility in Shrewsbury, New
Jersey" and "[h]is wish is to have his son Neil be with him
during his final years." (Ex. J at 1.)

The declaration of Mr. Messina's sister also lists several
instances in which her father fell, including while on a walk
"to get exercise" outside of the grounds of his assisted living
facility, at a wedding of a relative, and at a Thanksgiving
celebration. (*Id.* at 2.) Mr. Messina's sister declares that
her father's assisted living facility is "supposed to offer help
to residents" in "getting dressed, going to the bathroom, and
taking a shower," but that due to the lengthy wait for
assistance, her "father ends up taking care of himself." (*Id.*)

11

Due to the difficulties her father experiences, Mr. Messina's sister states that a number of relatives have "to respond on the fly to fill in" when needed, including a cousin in Brooklyn, and herself on occasions, despite the fact that she lives in Washington state.  (*Id.* at 3.)  Mr. Messina's sister states that she "often fl[ies] cross-country to care for [her] father when no one else is available" but that her father does not wish to have his daughter assist him with some tasks, such as showering or using the bathroom.  (*Id.*)  Based on the declaration of Mr. Messina's sister, Mr. Messina argues in his motion that he is "the only remaining option to give his father the care that he needs" and that if he was released, he would "live with his brother, a five-minute drive from [his father's] facility, and provide him with daily care."  (Mot. at 8.)

"The animating principle of [U.S.S.G. § 1B1.13(b)(3)] is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for whom the defendant would be the only available caregiver."  *United States v. Lisi*, 440 F. Supp. 3d 246, 252 (S.D.N.Y. 2020).  Although the Court is sympathetic to Mr. Messina's situation, the record before the Court does not establish that Mr. Messina is "the only available caregiver" for his father.

*First*, Mr. Messina fails to properly support his arguments

12

regarding the "inadequacy" of the assisted living facility in which his father currently resides.  (Reply at 2.)  The only facts proffered to show the inadequacy of the facility are that (1) Mr. Messina's father suffered a fall while on a walk for exercise outside the facility; and (2) delays in assistance for daily tasks result in Mr. Messina's father attempting the tasks themselves.  (*See generally* Ex. J; Mot. at 6.)  Though regrettable, the fact that Mr. Messina's father fell while on a walk outside the grounds of the facility does not, on its own, suggest negligence or a lack of care on the part of the staff of the assisted living facility.  As to the delays in response by staff at the facility, while they must surely be frustrating to Mr. Messina's family, they are far from the circumstances encountered in other cases applying U.S.S.G. § 1B1.13(b)(3).  Mr. Messina also fails to explain why, if the care being provided is so sub-standard, his family members could not seek to move Mr. Messina's father to a different facility.

*Second,* though Mr. Messina dismisses other available caretakers as being too "temporary, ad hoc, or incomplete" to ensure his father's wellbeing, the Court again does not find sufficient factual support for this argument in the record. (Mot. at 5-6.)  Mr. Messina's brother, who lives "a five-minute drive" from his father's assisted living facility, states in a letter that, although he assists with his father's doctor visits

13

and his day-to-day needs, "with my responsibilities as a husband, father, grandfather, and the owner of two companies; it is truly becoming a struggle."  (Exhibit A-2 to Defendant's Motion ("Ex. A-2").)  Mr. Messina's brother continues, noting that he "recently purchased a second home in Florida, to be closer to my company's headquarters" and that he is "required to go back and forth to Florida frequently."  (*Id.*)  As noted *supra*, Mr. Messina's sister lives in Washington state, and must travel cross-country to assist her father in New Jersey.  (*See generally* Ex. J.)  Mr. Messina also has a cousin in Brooklyn who recently assisted with his father's care, as also discussed previously.  (Ex. J at 3.)

Again, the Court is sympathetic to what must certainly be a challenging situation for Mr. Messina's siblings as they manage care for their father and his conditions.  Nonetheless, Mr. Messina fails to explain why, "apart from inconvenience, some combination of [his] relatives could not sufficiently attend to his [father's] medical needs."  *United States v. Rodriguez*, No. 20-CR-513 (AT), 2024 WL 1464661, at *3 (S.D.N.Y. Apr. 4, 2024).  Mr. Messina's evidence shows that, although it has been a challenge, a combination of family members has been able to coordinate to respond to his father's medical needs.  As such, the Court does not find that Mr. Messina is the "only available caregiver" for his father.

14

Regarding relevant caselaw within the Second Circuit, Mr. Messina argues in his reply that "the government does not even attempt to distinguish a single case that Mr. Messina cited for the purpose of factual comparison."  (Reply at 1.)  The Court disagrees with Mr. Messina that the cases "compare favorably" to his situation, as it finds that each of the cited cases involving family circumstances differ significantly from the facts present here.  The Court will briefly examine the cases interpreting U.S.S.G. § 1B1.13(b)(3).

Beginning with *United States v. Boccanfuso*, No. 15-CR-341 (LTS), 2023 WL 3741980, at *3 (S.D.N.Y. May 31, 2023), in that case, the district court granted a sentence reduction when the defendant's 11-year-old daughter "was removed from her mother's custody due to neglect" and, while the daughter was currently living with the defendant's parents, "they [were] struggling to care for her adequately due to their age and health conditions." *Id.* at *3.  In light of those hardships "and the unique support that [defendant] can provide as [his daughter's] father," the court found extraordinary circumstances supporting a reduction in sentence were present.  *Id.*  The Court does not find the circumstances of *Boccanfuso* to be analogous to Mr. Messina's case.  In *Boccanfuso*, the defendant's daughter was removed from her mother's care and placed into the state foster care system based on the "instability, trauma, and neglect" that she faced

15

at her mother's hands. *Id.* The daughter's subsequent caregivers, her grandparents, were struggling to care for her given their age and health conditions. *Id.* Here, although Mr. Messina's family is not satisfied with his care at the assisted living facility in New Jersey, it is hard to find an analogy to the situation of an 11-year-old child placed into foster care after suffering trauma at the hands of her mother. Combined with the numerous relatives who have been able to step in to assist as needed, the Court does not find Mr. Messina's situation to be analogous to that of *Boccanfuso*.

Turning next to *United States v. Khan*, No. 18-CR-830 (VSB), 2023 WL 2911021 (S.D.N.Y. Apr. 11, 2023), the district court considered family circumstances "together" with other circumstances to conclude that extraordinary and compelling circumstances exist for compassionate release. *Id.* at *3-4. In *Khan*, the defendant's family situation, as described by the court, was "dire." *Id.* at *3. All of the defendant's relatives were located in Pakistan, defendant's "mother [was] seriously ill and require[d] multiple visits to the hospital a week, and three of his brothers [were] drug addicted and mentally ill." *Id.* Combined with the fact that the defendant's wife did not work and struggled to support an infant son, and the fact that "[the defendant's] wife and mother have taken out personal loans to support the family that they cannot repay, and have exhausted

16

their lines of credit," the court found the circumstances to support its finding when combined with the defendant's "litany of health conditions." *Id.* at *3-4.  Nonetheless, the reviewing court acknowledged that "[the defendant] does not satisfy the Sentencing Guidelines' requirements for compassionate release as a sole caregiver." *Id.* at *3

The Court does not find Mr. Messina's situation to be analogous to the "dire" situation encountered in *Khan*. Furthermore, there were other special circumstances present in *Khan* not present here.  In *Khan*, the defendant was scheduled to be released five months after the court's grant of compassionate release, and consented to deportation to Pakistan.  *Id.* at *4-5. The court concluded that the defendant would likely "spend several months in ICE custody pending his removal to Pakistan" and did not qualify for early-release to a halfway house or community-based program like home-confinement.  *Id.* at *5. While more applicable to the § 3553(a) analysis than the finding of extraordinary and compelling reasons, the Court finds the additional factual background important in distinguishing the facts of *Khan* from the instant case.

In *United States v. Snype*, No. 02-CR-939 (DC), 2023 WL 4622870 (S.D.N.Y. July 19, 2023), the Court likewise finds the case to be distinguishable from Mr. Messina's situation.  In *Snype*, the defendant, who had been sentenced to a mandatory life

sentence pursuant to the "three strikes" statute in effect at the time, argued that he was the only caregiver for his common-law spouse. *Id.* at *6-7. Based on the affidavits filed with the motion, the court found that the defendant's partner "was severely suffering from schizophrenia," was "sitting and living on the sidewalk like a homeless person," was "soiled with urine and feces and has a smell of both," and was "missing her teeth" and toes. *Id.* at *7. The court found that the defendant had established not only that other family members were unable to take care of his common-law spouse, but that he was uniquely positioned to help her if he were to be released. *Id.* at *7-8. Even in the presence of these extreme circumstances, however, the court found that the defendant's partner's "circumstances are insufficient alone to constitute extraordinary and compelling reasons." *Id.* at *8.

As stated *supra,* although Mr. Messina's family is certainly dealing with a challenging situation in taking care of his father, it is distinct from the desperation present in *Snype*. Given the fact that even the difficult family circumstances in *Snype* did not, on their own, constitute "extraordinary and compelling reasons" sufficient to reduce the defendant's sentence, the Court is confident in concluding that Mr. Messina's family circumstances also do not, on their own, satisfy the requirements for granting a sentence reduction.

**B.    Other Reasons**

In addition to arguing that his sentence should be reduced because of family circumstances, Mr. Messina also argues that, taken together, other reasons support a finding of "extraordinary and compelling reasons" for a sentence reduction. Specifically, Mr. Messina argues that the Court should consider his (1) past abuse by a correctional officer; (2) numerous medical issues; and (3) "exceptional rehabilitation."  (Mot. at 8-19.)  Taken together with his family circumstances, Mr. Messina argues that this combination is "similar in gravity to those [factors] described" in the first four paragraphs of the Sentencing Commission's guidance on extraordinary and compelling reasons for a sentence reduction.  (*Id.* at 13 (citing U.S.S.G. 1B1.13(b)(5)).)  The Court respectfully disagrees with Mr. Messina and finds that "extraordinary and compelling reasons" warranting a sentence reduction are not present.

*First*, the Court does not find Mr. Messina's past abuse by a correctional officer to meet the standard established by U.S.S.G. 1B1.13(b)(4).  Mr. Messina argues that he was the victim of "unconscionable sadism" at the hand of a correctional officer while in the intensive care unit of Williamsport Hospital recovering from a heart attack.  (Mot. at 16.)  In support of this argument, Mr. Messina includes in his motion an excerpt from an affidavit that he swore as part of a formal

grievance process against an officer in 2015. (*Id.*) Specifically, according to Mr. Messina's affidavit, a correctional officer took the nurse call button away from Mr. Messina while he was recovering from his procedure, taking away his ability to summon emergency assistance, and also prevented Mr. Messina from utilizing the bathroom, among other things. (*Id.* at 16-17.) Mr. Messina further alleges that the correctional officer was rude and abusive to him and hospital staff. (*Id.*) Mr. Messina's allegations are troubling, and the Court does not excuse any misconduct on the part of the correctional officer. Nevertheless, Mr. Messina concedes that the "incident does not [rise] to the level of serious bodily injury," as required for a sentence reduction under U.S.S.G. § 1B1.13(b)(4)(A). (*Id.* at 17.)

As noted by the Government, Mr. Messina's allegations fall short of the type of conduct contemplated by the Guidelines in several regards. First, as he concedes, he fortunately was not the victim of either sexual abuse or "physical abuse resulting in 'serious bodily injury.'" U.S.S.G. 1B1.13(b)(4). Second, the misconduct was not "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding." *Id.* As confirmed by the Government, although Mr. Messina did bring a complaint, it was ultimately closed, and there is no evidence of

20

the type of findings required by the Guidelines.  (Gov't Opp. at
8-9.)  Although the conduct alleged by Mr. Messina, if true, is
certainly concerning, it is not the kind of abuse contemplated
by U.S.S.G. 1B1.13(b)(4).

*Second*, the Court does not find that Mr. Messina's medical
conditions, either on their own or in combination with other
factors, warrant a sentence reduction.  According to Mr.
Messina's moving papers, he has multiple medical issues,
including high cholesterol, Type-II diabetes, chronic chest
pain, a prior heart attack, obstructive sleep apnea, itchy bumps
on his scalp, osteoarthritis in his left foot, and bunions and
bone spurs in both feet.  (Mot. at 17-18.)  As with the
allegations of abuse, the Court does not wish to make light of
Mr. Messina's medical issues, which are numerous and certainly
challenging.  Those medical issues do not, however, constitute
"extraordinary and compelling reasons" supporting a sentence
reduction.

U.S.S.G. § 1B1.13(b)(1) discusses medical circumstances
that could support a sentence reduction, including a "terminal
illness . . . [a condition] that substantially diminishes the
ability of the defendant to provide self-care within the
environment of a correctional facility and from which he or she
is not expected to recover . . . a medical condition that
requires long-term or specialized medical care that is not being

21

provided and without which the defendant is at risk of serious deterioration in health or death" and also circumstances surrounding an outbreak of an infectious disease or a public health emergency.  Mr. Messina's medical circumstances do not fit into any of the categories contemplated by the Guidelines. A review of Mr. Messina's medical records, attached to the Government's opposition, reflect that he is receiving care for each of the cited conditions.  (*See* Gov't Opp. Exhibit 2.)  Mr. Messina is receiving medication for the previously-mentioned conditions, is being seen by a cardiologist, and received new footwear that alleviated his bunions.  (*Id.*)  None of the evidence provided by Mr. Messina necessitates a finding that he requires "specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death," as contemplated by the Guidelines.  U.S.S.G. § 1B1.13(b)(1).

*Finally*, the Court notes that pursuant to 28 U.S.C. § 994(t), rehabilitation is not, by itself, an extraordinary and compelling reason for a sentence reduction.  Considering Mr. Messina's arguments regarding his rehabilitation, the Court does not find that his rehabilitation, in combination with the other cited circumstances, justifies a sentence reduction. Notwithstanding the fact that a sentence reduction is not warranted, the Court is encouraged to read that Mr. Messina has

been making productive use of his time in custody.  As noted by his counsel, Mr. Messina had completed "141 programs" as of November 2023, including several programs aimed at addressing substance abuse, and several BOP employees have written in support of his sentence reduction.  (Mot. at 11.)

Mr. Messina's efforts to improve himself and, importantly, to address his substance abuse issues, is commendable. Likewise, the Court acknowledges the favorable letters of support submitted by Mr. Messina from individuals working at the correctional facility to which he is assigned.  (Mot. Exhibit D.)   One BOP officer describes Mr. Messina as a "model inmate" and notes that he has been "without an incident report" during his time in custody.  (*Id.* at 4.)   Multiple officers describe their letters as being the "first" time they had written a character letter for an inmate.  (*See generally id.*)   The Court's denial of a sentence reduction should not discourage Mr. Messina in his efforts at rehabilitation, which are positive and will serve him well upon his release.  As noted previously, however, rehabilitation alone is not grounds for a sentence reduction, and the Court does not find Mr. Messina's other proffered reasons considered in combination with his rehabilitation to constitute "extraordinary and compelling reasons" for a sentence reduction.

The Court also briefly notes that despite Mr. Messina's

efforts at rehabilitation while in prison, he has made limited progress towards the payment of his $120,611.30 restitution obligation owed to the family of Joseph Pistone, Jr. (*See* ECF No. 381, Government's Letter Update Regarding Restitution, at 1.) As discussed previously, Mr. Pistone was shot and killed in the course of an armed robbery that Mr. Messina conspired to commit. (*Id.*) To date, Mr. Messina has paid only $8,622.50, which the Government notes "is just barely more than the funeral expenses, burial expenses and the court transcript costs that the defendant is required to pay to Mr. Pistone's family." (*Id.* at 2.) Mr. Messina is still obliged to pay the remaining restitution amount, which totals nearly $112,000, not including interest. (*Id.*) The Second Circuit has previously noted that "restitution can be a useful step toward rehabilitation, a consequence specifically emphasized by Congress." *United States v. Brown*, 744 F.2d 905, 909 (2d Cir. 1984). Mr. Messina's failure to make more progress in the payment of his restitution obligation in the more than 10 years since it was imposed indicates that he still has work remaining in his efforts at rehabilitation.

The Court will not discuss every case cited by Mr. Messina in his motion and opposition but will note some of the factual differences between his case and previous cases in which sentence reductions were granted. Beginning with *United States*

*v. Amerson*, No. 05-CR-301 (JS), 2023 WL 4373589 (E.D.N.Y. July 6, 2023), the district court's finding of extraordinary and compelling circumstances rested on all the factors considered "in conjunction," as no one factor warranted the finding on its own. *Id.* at *4. The factors considered by the court included the defendant's significant health issues, his incarceration at a facility that was "particularly hard-hit by the [COVID-19] Pandemic," the defendant's "harsh and excessive" "stacked" 18 U.S.C. § 924(c)(1)(C) sentence, and the defendant's efforts at rehabilitation. *Id.* at *4-8.

Mr. Messina does not argue that the "obsolete § 924(c) stacking provision" is at issue in his case, as it was in *Amerson*, where it resulted in a 384-month sentence in that defendant's case. *Id.* at *7. Given the "excessive length of [the defendant's] sentence" was a key factor in the *Amerson* court's finding of extraordinary and compelling reasons, this Court finds Mr. Messina's circumstances to be distinguishable. The Government proved at the *Fatico* hearing that Mr. Messina was responsible for the solicitation, conspiracy and attempt to murder Michele Maniscalco, among other racketeering acts. In light of the serious offenses involved, the Court does not find that Mr. Messina was subject to an excessively long sentence that would not be imposed today, as was the case in *Amerson*.

Turning next to *United States v. Freeman*, No. 96-CR-527

25

(PKC), 2023 WL 6517466, (E.D.N.Y. Oct. 5, 2023), there, a
sentence reduction was granted primarily based on "the stark
disparity between the sentence [defendant] received and the
sentences of his co-defendants." *Id.* at *4. Specifically, the
court was concerned about the fact that the head of the criminal
organization who ordered five killings received a sentence of 30
years, and the defendant moving for a sentence reduction,
convicted of a single murder, received two life terms plus five
years. *Id.* The reviewing court could not find "a compelling
rationale" to justify the "disproportionately harsh sentence
that [defendant] received." *Id.* The court also considered
rehabilitation and the defendant's deteriorating health in
making a finding of extraordinary and compelling circumstances.
*Id.* at *4-6. Again, in Mr. Messina's case, the Court does not
find the sentence imposed to be excessively long, either in
isolation or in comparison to his co-defendants, given the
conduct for which each was ultimately convicted. Accordingly,
the Court does not find the situation in *Freeman* to be analogous
to Mr. Messina's case.

In *United States v. Rodriguez*, No. 05-CR-960 (JPO), 2022 WL
158685 (S.D.N.Y. Jan. 18, 2022), the reviewing court found that
the defendant's "substantial evidence of rehabilitation and
growth, along with [his] health conditions and the harsh nature
of incarceration during COVID" weighed in favor of a sentence

reduction from 50 years to 25 years in custody. *Id.* at *1-5. The reviewing court noted, in weighing the Section 3553(a) factors, that the "[defendant] will be deported to Colombia when he has completed his sentence," a consideration which the court found "relevant" to its analysis. *Id.* at *5. The Court notes that there is evidence of rehabilitation in *Rodriguez* and in Mr. Messina's case, but does not find that Mr. Messina's rehabilitation is sufficient to justify a sentence reduction below the imposed sentence of 18 years, as previously explained. While rehabilitation and medical circumstances might have been sufficient to justify a sentence reduction to 25 years followed by deportation in Mr. Rodriguez's case, the Court does not find they warrant a sentence reduction below 18 years in Mr. Messina's case.

Finally, turning to *United States v. Russo*, 643 F. Supp. 3d 325 (E.D.N.Y. 2022), while the reviewing court found the defendant's "extraordinary rehabilitation" and health issues to support the "extraordinary and compelling" circumstances necessary for a sentence reduction, the reviewing court dedicated much of its analysis to changes in the sentencing laws and sentencing disparities. *Id.* at 332-34. Specifically, the reviewing court noted that when the defendant was sentenced, the sentencing guidelines were mandatory, and also pointed to the fact that the defendant's co-defendants who did not go to trial

27

received sentences "ranging from time-served, equating to approximately four years, to 270 months." *Id.* at 334.  In light of those disparities, among other reasons, the reviewing court found it appropriate to reduce the defendant's sentence from life plus five years to 35 years and lifetime supervised release.  *Id.* at 336.  Here, the Court does not find such unique circumstances militating in favor of a sentence reduction to be present in Mr. Messina's case.

In conclusion, because the Court does not find extraordinary and compelling reasons justifying a sentence reduction to be present, no sentence reduction is warranted in Mr. Messina's case.  The Court finds this conclusion to be consistent with the applicable policy statements issued by the Sentencing Commission and past precedent within this circuit.

**III. Sentencing Factors**

Notwithstanding the absence of extraordinary and compelling reasons, the Court finds that the sentencing factors in 18 U.S.C. § 3553(a) also do not favor relief.  *See United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) ("[E]xtraordinary and compelling reasons are necessary – but not sufficient – for a defendant to obtain relief under § 3582(c)(1)(A).").  The § 3553(a) factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the

28

offense, promote respect for the law, and otherwise accomplish the aims of the criminal justice system; (3) the kinds of sentences available; (4) the advisory guidelines sentence range; (5) pertinent policy statements by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants, and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

Mr. Messina acknowledges the seriousness of his offenses but argues that his "role in the robbery" which led to Mr. Pistone's death was "mitigated." (Mot. at 20-21.) Mr. Messina further argues that he did not "conspire to commit the harming (much less killing) of anyone." The Court respectfully disagrees with Mr. Messina's characterization of his conduct. Specifically, the Court made the following findings during Mr. Messina's April 4, 2014, Sentencing:

> [THE COURT]: First, regarding the conspiracy, solicitation and attempt to murder Michele Maniscalco, I find that the government has established by a preponderance of the evidence that Mr. Messina is responsible for the solicitation, conspiracy and attempt to murder Michele Maniscalco.
>
> Michael Bitz, who pled guilty to assault and maiming in aid of racketeering for his role in the Maniscalco attempted murder is a cooperating witness and credibly testified that the defendant asked him to kill Maniscalco and provided him with the gun, which Bitz described as a 380-caliber Kurz to . . . carry out the murder.

> Mr. Bitz further credibility testified that he did in
> fact shoot Mr. Maniscalco in the back of the head with
> the gun provided by the defendant, but that because
> Mr. Maniscalco survived the shooting, the defendant
> reprimanded him and subsequently referred to Mr. Bitz
> as ["]Mikey Miss.["]

(April Sent. Tr. at 25-26.)  Mr. Messina's counsel fails to

account for Mr. Messina's role in the attempted murder of Mr.

Maniscalco, offering in reply to the Government only that the

attempted murder was "35 years ago."  (Reply at 3.)  Regardless

of the age of the conduct, the Court finds that the severity of

Mr. Messina's offenses, including the conspiracy to murder Mr.

Maniscalco, weighs against a sentence reduction.

The Court likewise finds that the remaining factors either

weigh against reducing Mr. Messina's sentence or are neutral.

Mr. Messina's sentence of 18 years in custody was "below Mr.

Messina's effective guideline range of 20 years," as noted by

the Court during his sentencing, and confirmed by the Second

Circuit.  (April Sent. Tr. at 56); *see also United States v.*

*Messina*, 806 F.3d 55, 66 (2d Cir. 2015) ("The challenged 18-year

sentence, two years below the effective 20-year Guideline,

easily falls within the broad range of permissible decisions

available to the district court.").  The Court found that an 18-

year sentence was necessary in spite of the numerous letters

received in support of Mr. Messina, noting Mr. Messina's "long

and at times violent and deadly dedication to a life of crime

with the Bonnano organized crime family." (April Sent. Tr. at 56.) Mr. Messina likewise has not identified any unwarranted sentencing disparities as compared to other defendants "with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Therefore, even if the Court had found that "extraordinary and compelling reasons" supported a sentence reduction, the § 3553 factors would weigh against such a reduction.

## IV. Mr. Messina's Supplemental Submission

In addition to the motion for sentence reduction and reply to the Government's opposition, Mr. Messina's counsel also wrote to "provide additional information in support of Mr. Messina's motion," arguing that Mr. Messina provided "substantial assistance" to the U.S. Attorney's Office for the Eastern District of New York, and as such, is entitled to a sentence reduction. (ECF No. 378, Defendant's Supplemental Submission dated March 5, 2024, at 1.) The Government responded on March 29, 2024, at the request of the Court, providing additional information on Mr. Messina's attempts at cooperation, and noting that the attempts did not rise to the level of substantial assistance. (*See generally* ECF No. 380, Government Reply dated March 29, 2024).

The Government also argues in their letter that "a sentencing reduction on the basis of substantial assistance is

not properly considered on a motion for compassionate release,"
and the Court agrees.  A district court is permitted to reduce a
sentence for substantial assistance upon motion of the
Government pursuant to Fed. R. Crim. P. 35(b).  *See United
States v. Doe*, 938 F.3d 15, 17 (2d Cir. 2019); *see also* 18
U.S.C. § 3582(c)(1)(B) ("the court may modify an imposed term of
imprisonment to the extent otherwise expressly permitted by
statute or by Rule 35 of the Federal Rules of Criminal
Procedure").  The Government has not moved for a sentence
reduction pursuant to Fed. R. Crim. P. 35(b), and thus the Court
need not "determine whether the defendant in fact provided
substantial assistance."  *Doe,* 938 F.3d at 17.

Even if the Court were to consider Mr. Messina's attempts
at cooperation under the catch-all provision for "other
circumstances . . . similar in gravity to those described"
elsewhere in the Guidelines Policy Statement governing motions
pursuant to 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. § 1B1.13(b)(5),
his attempts at cooperation would not constitute "extraordinary
and compelling reasons" justifying a sentence reduction.  While
Mr. Messina's attempts to cooperate with the Government and
separately blow the whistle on potentially dangerous
circumstances in prison are laudable, the Court finds they do
not justify a sentence reduction.

To the extent Mr. Messina continues to believe his attempts

32

to assist the Government warrant a sentence reduction for substantial assistance, the Court notes that "[t]he government has 'a power, not a duty, to file a motion when a defendant has substantially assisted.'" *United States v. DeFeo*, 327 F. App'x 257, 258 (2d Cir. 2009) (quoting *Wade v. United States*, 504 U.S. 181, 185 (1992)).  "Therefore, [Mr. Messina] is entitled to relief only if he can establish that the government's reasons for refusing to file a Rule 35(b) motion were not rationally related to any legitimate Government end." *Id.* (internal quotation marks and citation omitted).  Mr. Messina has not made such an argument in the instant case, and so the Court need not consider the matter further.

## CONCLUSION

For the reasons stated above, the Court respectfully denies Mr. Messina's motion for compassionate release.


**SO ORDERED**

Dated:    May 31, 2024
          Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York